# Richmond

## JOSEPH CHEATHAM V. COMMONWEALTH OF VIRGINIA.

October 14, 1974.

Record No. 740115.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*C. Thomas Mustian; John Dirffie Tyler (Edward E. Lane & Associates* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

Joseph Cheatham was tried by the court, sitting without a jury, and found guilty of credit card theft. His punishment was fixed at confinement for three years in the penitentiary, with two years suspended on good behavior. We granted Cheatham a writ of error to the judgment order.

The sole question for our determination is whether the evidence, which is uncontradicted, is sufficient to support Cheatham's conviction.

On July 9, 1973, Mrs. Jane Brooks was robbed at gun point in her home in Richmond by two men. Among the items taken was Mrs. Brooks's wallet, which contained a BankAmericard credit card issued by First National Exchange Bank of Virginia, Roanoke, Virginia, to Carlton P. Brooks, III, Mrs. Brooks's husband. Mrs. Brooks testified that the credit card had been signed by her and that it was in her wallet at the time of the

robbery. She did not attempt to identify Cheatham as one of the robbers.

Eleven days after the robbery, Detective G. C. Robinson, Jr., of the Richmond Police Department, arrested Cheatham, an escapee from Hanover County. The arrest, unrelated to the Brooks robbery, was made when the officer found Cheatham sitting on the porch of a house on Claiborne Street in Richmond. However, while searching Cheatham, Robinson discovered Mrs. Brooks's credit card and a Social Security card not issued in Cheatham's name. The credit card was not in a wallet but was loose in Cheatham's right rear pocket. Officer Robinson thereupon also arrested Cheatham "for this card," the warrant subsequently issued charging that Cheatham unlawfully and feloniously had "in his possession a stolen BankAmericard property of Carlton P. Brooks, III."

Cheatham was tried under an indictment that charged him with obtaining and withholding the described credit card "with intent to use the same for his own benefit with the intent to cheat and defraud," in violation of Code §§ 18.1-125.3 and 18.1-125.6.

Officer Robinson testified that Cheatham told him that he had found the credit card in the 1600 block of Jacqueline Street in Richmond and that a "lady had told him that the card was 'hot' or not to take it, something to that extent." The officer could not recall whether Cheatham said how long it had been since he had found the card, but Robinson admitted that Cheatham said that "he was going to put the card in the mailbox." The credit card, admitted into evidence, contains no signature.

Cheatham's motion to strike the Commonwealth's evidence for insufficiency was overruled. No evidence was adduced on behalf of Cheatham. The trial court found Cheatham guilty "of Credit Card Theft as charged in the indictment."

Code § 18.1-125.3 (Cum. Supp. 1974) provides that a person is guilty of credit card theft when:

"(a) He takes, obtains or withholds a credit card from the person, possession, custody or control of another without the cardholder's consent or who [sic], with knowledge that it has been so taken, obtained, or withheld, receives the credit card with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder . . . ."

Code § 18.1-125.6, also referred to in the indictment, deals with credit card fraud and is not relevant.

The facts in this case are somewhat similar to those in *Sullivan* v. *Commonwealth*, 210 Va. 201, 169 S.E.2d 577 (1969). There, we affirmed his conviction of burglary where Sullivan was found in possession of a credit card stolen in the burglary almost three months earlier. We held that the evidence warranted an inference that the breaking and entering and theft were committed at the same time by the same person and as a part of the same transaction, so that the exclusive possession of the recently stolen card, unexplained or falsely denied, could properly give rise to the inference that the possessor had committed the burglary. We also held that recency of possession is an issue to be determined by the trier of fact.

We reaffirm the principles approved in *Sullivan*, but we find that case to be distinguishable from the present case in a significant particular. Cheatham was not charged with the Brooks robbery, and the Commonwealth does not contend that he participated in that crime. Cheatham was charged with the statutory offense of credit card theft for withholding Mrs. Brooks's credit card after it came into his possession.

Cheatham argues that the Commonwealth proved only that he had possession of the credit card and that the inference of guilt from possession of recently stolen goods, unexplained or falsely explained, should not be applied to him because he is entitled to have the credit card theft statute strictly construed. The Commonwealth insists that more than mere possession was proved, that Cheatham was sitting idly on the porch after he had been informed that the credit card was stolen, and that the trier of fact could reasonably have inferred that Cheatham intended to maintain possession, which could constitute "withholding." The Commonwealth further contends that proof of mere possession is sufficient because the trial court could have disbelieved his explanatory statement and then could have inferred that Cheatham was guilty from his falsely explained possession of the recently stolen card. These contentions require a review of the statute under which Cheatham was tried and convicted.

The statute was enacted into law as Chapter 480 of the 1968 Acts of Assembly, the title to which provides in pertinent part:

*"An Act to amend the Code of Virginia by adding in Chapter 3 of Title 18.1 and article numbered 4.1, containing §§ 18.1-119.4 through 18.1-119.13,[1] so as to define certain words and phrases in connection with the use of credit cards; to define credit card theft; <u>to create prima facie evidence</u> of such theft; . . . . "*

(Emphasis added.)

Except for one omission this statute appears to be identical in language, including grammatical errors, to the credit card theft law adopted in North Carolina in 1967. N.C.G.S. § 14-113.8 *et seq.* Section 14-113.10 of the North Carolina statute, however, provides that possession of credit cards issued in the names of two or more persons other than members of one's immediate family shall be prima facie evidence of credit card theft. The records of the General Assembly of Virginia reveal that this same provision appeared as § 18.1-119.6 in House Bill 1115, as introduced at the 1968 session, but was deleted before final enactment of the legislation as Chapter 480, Acts 1968. As a consequence there is no language in the Virginia statute specifically creating prima facie evidence of credit card theft, although there is a provision, identical to one in the North Carolina statute, that when a person, other than the cardholder or a person authorized by him, possesses two or more signed credit cards, such possession shall be prima facie evidence of credit card forgery.

We are unwilling to extend the presumption of guilt from unexplained or falsely explained possession of recently stolen goods, reaffirmed in *Sullivan* v. *Commonwealth, supra,* to the "withholding" of a credit card, constituting statutory grand larceny, of which Cheatham was convicted. A penal statute is to be strictly construed against the Commonwealth. *McKinney* v. *Commonwealth,* 207 Va. 239, 243, 148 S.E.2d 829, 831-32 (1966). We conclude that if the General Assembly had intended to create prima facie evidence of withholding a credit card from mere possession of a recently stolen credit card it would have included specific language to accomplish that purpose. Thus, in *Fitts* v. *State,* 507 P.2d 942 (Okla. 1973), the defendant was convicted of

---

[1] Now §§ 18.1-125.2 through 18.1-125.10, as assigned by the Virginia Code Commission.

receiving a stolen credit card found in his possession nine days after it had been taken in a burglary. But by the express language of the Oklahoma statute possession without the owner's consent created a presumption that the possessor had taken the card or had received it with the intent to use it.

So far as we can ascertain the word "withhold," as used in the context of the credit card theft statute, has never been construed. It must, however, import something more than mere retention, for mere retention could be consistent with innocent intent. The retention must be accompanied by an intent to deprive the owner of possession and to use the card, or to sell it, or to transfer it to a person other than the issuer or the cardholder. The United States Supreme Court has held that criminal intent, such as that evidenced by unreasonable delay in payment, must be shown to convict one of "withholding" pension funds in violation of a criminal statute. *United States* v. *Irvine*, 98 U.S. 450 (1878). But in the present case there is no evidence to show how long Cheatham had the credit card. Nor is there any evidence that Cheatham used or attempted to use the card, or that he had any intent to use it, sell it, or transfer it.

The Commonwealth's only evidence of withholding is that Cheatham had not returned the card despite his statement that he intended to do so. There is no evidence that Cheatham had the time or the opportunity to return the card. It may be, as the Commonwealth argues, that Cheatham's statement of intent to mail was patently untrue because the card owner's address was not shown on the card. On the other hand, the card stated on its obverse side that it had been issued by a bank in Roanoke, so that mailing to the bank might have appeared to an escapee as the safest means available to him of disposing of the stolen article.

We hold that the evidence was insufficient to support Cheatham's conviction. The judgment of conviction is therefore reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Carrico, J., dissenting.