COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


ROBERT MATHEW LYNE

v.   Record No. 2428-94-2                    MEMORANDUM OPINION* BY
                                             JUDGE MARVIN F. COLE
 COMMONWEALTH OF VIRGINIA                       MARCH 26, 1996


                                        FROM THE CIRCUIT COURT OF
HENRICO COUNTY
                         James E. Kulp, Judge

              Mark K. Tyndall (Christopher C. Booberg;
              Morchower, Luxton and Whaley, on brief),
              for appellant.

              Thomas C. Daniel, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


     The appellant, Robert Mathew Lyne, was convicted in a bench

trial of credit card theft in violation of Code § 18.2-192(1)(a).

 He contends that the evidence is insufficient to support his

conviction.  We disagree and affirm.

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.  The judgment of a trial

court sitting without a jury is entitled to the same weight as a

jury verdict and will not be set aside unless it appears from the

evidence that the judgment is plainly wrong or without evidence

to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358

_____

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

S.E.2d 415, 418 (1987).  "'The finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.'"  Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (citation omitted).

Guided by these standards of review, the record discloses that at about 1:45 a.m. on January 7, 1994, Karen Crawford parked her car on the street in front of her house.  She locked the car, but inadvertently left her purse in it.  At 7:50 a.m. she saw that the right rear window of the car had been smashed.  Her purse had been stolen.  The purse contained her wallet, ninety-seven dollars in cash, her credit cards, a First Virginia Bank ATM card, her checkbook and other items.  Crawford had written her personal identification number for the ATM card on a page in the checkbook.  When the First Virginia Bank opened at 9:00 a.m., she reported the theft of the ATM card.

At 3:01 a.m. on January 7, 1994, seventy-five dollars were withdrawn from Crawford's bank account by use of her First Virginia Bank ATM card from a Central Fidelity Bank branch. Camera equipment at the bank photographed Lyne at the ATM machine.

At 3:07 a.m. on January 7, 1994, one hundred and forty dollars were withdrawn from Crawford's bank account by use of her First Virginia Bank ATM card from a Crestar Bank branch located

2

about two miles, or five minutes, from the Central Fidelity Bank branch. Camera equipment at Crestar Bank showed a person with a jacket pulled over his head covering his entire face and head standing in front of the machine. The Crestar photographs showed the arm of another person standing to the right of the person with the jacket covering his head.

Henrico County Police Investigator Michael L. Wade testified that he investigated the theft of the ATM card from Crawford after he was provided with the pictures from Central Fidelity Bank and Crestar Bank. He first spoke with Lyne on March 16, 1994. Lyne admitted to the officer that he was the person shown in the Central Fidelity pictures, but he stated that he did not use the ATM card. Lyne was shown the Crestar Bank pictures, but he was reluctant to tell the officer who the person was under the coat. However, through his mother, he gave the officer the name of Jason Meeks. He did not say who the person was in the picture.

Later in the day, Lyne telephoned the officer at his office and gave him the following information:

> [H]e said that they used to go to the machine to get money to go to Taco Bell. He doesn't know who used the card that day. He said that Jason, who is Jason Meeks, used the card a lot at the machine and that he'd also been to ATM Machines before with Danny Proffit. He also said that he was more than likely drunk and don't remember going to the two places, but that he would have remembered if he had broke into a car. And he also told me three places that they went to late at night. The Amoco, the Taco Bell, and the Waffle House.

3

Lyne was arrested on May 12, 1994, and he furnished Officer Wade additional information at that time:

> He said that he didn't, speaking of himself, didn't receive any of the money, that he didn't know where the card came from, that Jason was standing beside the machine, that he had no idea prior to going to the machine, what was going on. He said that Jason said he stood beside the machine because they take pictures of people, and he said he didn't know anything about the machine but that they probably went to Taco Bell after that.

Wade also said that Lyne did not say who paid at Taco Bell.

Lyne testified in his own behalf. He said he lived with Jason Meeks. When shown the pictures taken at Central Fidelity Bank, he recognized his photograph. He stated that it was about fifty feet from the curb to the machine and that he was ten to twenty feet back from the machine.

Lyne admitted being present at the Central Fidelity Bank machine, but could not recall being dropped off during the six minutes between 3:01 a.m. and 3:07 a.m. which elapsed during the trip from Central Fidelity Bank to the Crestar Bank. Lyne was asked what time he met Meeks on the night in question. He testified that his girlfriend, who lived across the street from him, always had to be home at midnight. He left there at 12:05 a.m. and walked across the street. He remembered Meeks "coming and saying 'Let's go out to eat,' and there was a group of them, as we usually do. We always met back and went out to eat. We always went in separate directions most time at night."

Code § 18.2-192(1) provides that a person is guilty of

4

credit card theft when:
> (a) He takes, obtains or withholds a credit card . . . from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, obtained or withheld, receives the credit card . . . with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder.

Lyne contends that under the first clause of Code § 18.2-192(1)(a), the Commonwealth must prove that he took, obtained or withheld a credit card without consent. He asserts that there is no evidence in the record to show who stole the purse and certainly none to show that Lyne broke into the car and stole the purse. In order to decide this case, we do not have to determine who broke into the car and stole the purse. Therefore, we make no determination under the first clause of Code § 18.2-192(1)(a) and proceed to the second clause.

The statute may be violated by proof that the accused was in receipt of the card knowing that it was taken from the possession, custody or control of the cardholder without her consent. In a prosecution under those circumstances, the Commonwealth does not have to prove that the accused was the thief; however, it does have to prove that he had knowing receipt of a card with intent to use, sell or transfer it. See Cheatham v. Commonwealth, 215 Va. 286, 290, 208 S.E.2d 760, 763 (1974); Sandoval v. Commonwealth, 20 Va. App. 133, 136, 455 S.E.2d 730, 731 (1995).

5

The record establishes that Lyne and Jason Meeks were together at some point after 12:05 a.m. on January 7, 1994. Lyne testified, "I just remember him coming and saying 'Let's go out to eat.'" At 1:45 a.m. Crawford parked her car in front of her home and left her purse in the car with the ATM card in it. Between 1:45 a.m. and 3:01 a.m. (one hour and sixteen minutes) someone broke into the car and stole the purse and its contents, including the ATM card. At 3:01 a.m. Lyne was photographed at the Central Fidelity Bank ATM machine using the card. Lyne admitted his presence at the machine. He also admitted to the police officer that Jason Meeks was also present. The fact finder could reasonably infer that Lyne knew that the card was stolen from the facts that it was 3:01 a.m. and the manner in which they approached the machine.

Susan Brooks, Bank Card Security Manager at Central Fidelity Bank, testified that if you were standing directly in front of the machine and put the card in the machine, the picture would be centered. She testified that a person could approach from the side and push the button from the side and the camera would not take their picture. The photograph showed Lyne ten to twenty feet in front of the machine and located where he could reach the machine. Lyne testified that Meeks always approached the machine from the side because he knew his picture could not be taken there. We find that the fact finder could reasonably infer from this evidence guilty knowledge. The evidence demonstrates that

6

both Lyne and Meeks knew that the card was stolen.

Only six minutes elapsed between the withdrawals at Central Fidelity Bank and Crestar Bank. It can be inferred that the card did not change hands during this six minutes. Meeks had it at the Central Fidelity Bank. Meeks was present and the card was used six minutes later at Crestar Bank. Lyne identified the coat in the Crestar Bank photograph as belonging to Meeks. It can be inferred from the short period of time that elapsed that Lyne was still with him. Meeks and Lyne lived together. Lyne testified that he did not recall going to the second machine. When asked where he was dropped off during this six minutes, Lyne testified:

> I'm not saying that he did. I'm not sure.
> Well, you say he was, he could have taken me
> home. I could have got back in the car and
> passed out. I know for sure, that whole
> time, right after Christmas I drank for a
> long, it could have been forty-some straight
> days that I was a complete drunk . . . .

The trial judge compared the coat in the accused's picture in the Central Fidelity Bank photograph with the arm shown in the Crestar Bank photograph and found that "the Court believes that the coat that's shown in there is very consistent with that being worn by the defendant in Commonwealth's Exhibit No. 1." The court further opined that "There cannot be any question in anybody's mind that Mr. Meeks in [the Crestar Bank photograph] is using a card that doesn't belong to him. He's covered his face up, he's covered over so nobody can see his face." The trial court found that Lyne was with Meeks at the time of the Crestar

7

Bank theft and that he knew Meeks was using a card that did not belong to him. The court then found that Lyne was aiding and abetting Meeks in the credit card thefts.

It is well established that a "principal in the first degree is the actual perpetrator of the crime." Hall v. Commonwealth, 8 Va. App. 526, 530, 383 S.E.2d 18, 21 (1989). A principal in the second degree is a person present at the scene of the offense, either actively or constructively, aiding or abetting its commission through "words, gestures, signals or actions to in some way encourage, advise, . . . urge, or . . . help" the primary actor. Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986). A principal in the second degree "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18.

Aiders or abettors must either share the perpetrator's criminal intent or commit an overt act in furtherance of the crime, thereby making the offense "more likely" to occur. Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 826 (1991). Whether an accused aided and abetted in the commission of an offense is a question of fact to be determined from the circumstances of each case. Pugliese v. Commonwealth, 16 Va. App. 82, 93, 428 S.E.2d 16, 25 (1993).

Under Code § 18.2-192(1)(a) the Commonwealth is required to prove "intent to use . . . or sell . . . or transfer" the card. There can be no question that the Commonwealth proved this

element because Lyne and Meeks actually used the card and received money from it on two different occasions.

The evidence cited herein, when considered with the entire record, establishes Lyne's role as a confederate of Meeks, acting at least as an aider and abettor with him knowingly possessing a credit card without permission of the cardholder with intent to use it.  We find credible evidence in the record to support the judgment of the trial court beyond a reasonable doubt.  Therefore, we affirm the conviction.

<u>Affirmed.</u>