671 S.E.2d 407

**Mihai GHEORGHIU**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0801–07–4.**

Court of Appeals of Virginia,
Alexandria.

Jan. 20, 2009.

292

Jonathan Shapiro, J. Frederick Sinclair, Alexandria, for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: HUMPHREYS, HALEY and BEALES, JJ.

BEALES, Judge.

An Arlington County jury convicted Mihai Gheorghiu (appellant) of thirty-six counts of credit card theft, in violation of Code § 18.2–192 (case numbers CR05–1231 through CR05–1240, CR06–453 through CR06–469, and CR06–752 through CR06–760); eight counts of credit card forgery, in violation of Code § 18.2–193 (case numbers CR06–441 through CR06–448); five counts of identity theft, in violation of Code § 18.2–186.3 (case numbers CR05–1241 through CR05–1243 and CR05–1247 through CR05–1248); three counts of credit card fraud, in violation of Code § 18.2–195 (case numbers CR06–449, CR06–451, and CR06–452); and one count of possession of burglarious tools, in violation of Code § 18.2–94 (case number CR06–440). Appellant challenges these convictions on several grounds addressed below. For the following reasons, we affirm in part and dismiss in part.

## I. Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" *Archer v. Commonwealth,* 26 Va.App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting *Martin v. Commonwealth,* 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987)); *see Riner v. Commonwealth,* 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004) (viewing the evidence in the light most favorable to the Commonwealth, "as we must since it was the prevailing party in the trial court").

So viewed, the evidence proved that appellant and his cousin traveled in a Chevrolet Trailblazer from New York City to the Northern Virginia area on September 20, 2005. Using his own credit card, appellant paid for a meal in Arlington County and for a hotel room in the City of Alexandria on the night of September 20. Appellant and his cousin checked out of the hotel before noon on September 21, 2005.

At approximately 8:00 a.m. on September 21, appellant accessed a program file on his laptop computer, interfacing the computer with a "remagger," a device that enables a person to read and write data to the magnetic strip on the back of a plastic card. It is unknown where appellant was when he accessed this program file. Throughout the day, appellant attempted to use stolen credit card numbers to purchase goods and services in Alexandria, Arlington, and Fairfax County, and some of these attempts were successful.

After 4:00 p.m. on September 21, appellant was stopped for speeding in Arlington County. The police officer discovered that appellant had an outstanding warrant in New Jersey and took appellant into custody. Appellant's cousin was permitted to leave on foot. A search of the Trailblazer yielded appellant's laptop, a thumb drive, and five compact discs, all of which contained stolen credit card information. In total, appellant possessed approximately 100 stolen credit card names and numbers. In addition, twelve credit cards were found in the vehicle, eleven with appellant's name on them, but only three cards had numbers encoded on the magnetic strip that matched the engraved number on the front of the credit card.

During appellant's pretrial detention, the authorities recorded several phone conversations, mostly in Romanian, apparently discussing credit card fraud and credit card theft. Concerned about ongoing criminal activity, the authorities searched appellant's jail cell and retrieved "foreign language stuff" and credit card sheets. The authorities attempted to avoid disturbing papers with the letterhead of appellant's attorneys, but appellant claimed that the seized materials

written in Romanian related to an ongoing federal investigation. Appellant claimed that he sought to negotiate a "global settlement" through his assistance with that investigation. Appellant acknowledged that this information was "not specific to the charges in Arlington County." After a hearing, the trial court rejected appellant's claims of Fourth and Sixth Amendment violations with respect to the warrantless jail cell search and seizure.

At trial, appellant argued that venue was improper on a number of charges, that the possession of burglarious tools charge should have been stricken, and that the Commonwealth presented insufficient proof that appellant, rather than his cousin, was the perpetrator of the offenses.[1] The trial court rejected these arguments, and the jury convicted appellant of the aforementioned offenses.

## II. The Notice Of Appeal

Rule 5A:6 provides, in pertinent part, that "[n]o appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal." Rule 5A:3 establishes that the time prescribed by Rule 5A:6 is mandatory unless an appropriate request for an extension is granted. The failure to file a notice of appeal with the clerk of the trial court within thirty days after entry of a final order as required in Rule 5A:6(a) is a jurisdictional defect. *See Johnson v. Commonwealth,* 1 Va.App. 510, 512, 339 S.E.2d 919, 920 (1986).

Here, the trial court entered the final orders on March 9, 2007. Appellant filed a notice of appeal on April 5, 2007; however, this initial notice of appeal referenced only cases CR05–1230 through CR05–1249.[2] Thus, appellant timely filed

---

1. Appellant does not pursue this sufficiency of the evidence argument on appeal.

2. Appellant's reference to case numbers CR05–1230 and CR05–1249 was erroneous, as was his inclusion of case numbers CR05–1244

a notice of appeal for only those cases. On April 13, 2007, more than thirty days after entry of the final orders, appellant filed an amended notice of appeal, listing additional case numbers.

 "As a general rule, insubstantial defects in a timely filed appeal 'should not be fatal where no genuine doubt exists about who is appealing, *from what judgment,* to which appellate court.'" *Christian v. Va. Dep't of Soc. Servs.,* 45 Va.App. 310, 315, 610 S.E.2d 870, 872 (2005) (emphasis added) (quoting *Becker v. Montgomery,* 532 U.S. 757, 767–68, 121 S.Ct. 1801, 1808, 149 L.Ed.2d 983 (2001)). Appellant claims that he intended to appeal all the convictions when he filed his initial, timely notice of appeal, but the document did not clearly notice this intention. *See Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992) ("[T]he notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal."). Appellant's subsequent filing of an amended notice of appeal and his petition for appeal, which fully briefed issues relating to all of the convictions, failed to cure the defect in appellant's timely notice of appeal, as those documents were filed outside of the jurisdictional thirty-day period.

Accordingly, we cannot address the issues raised in relation to case numbers CR06–440 through CR06–449, CR06–451 through CR06–469, and CR06–752 through CR06–760, and we dismiss the appeal in relation to those convictions.

### III. ANALYSIS

### A. VENUE

#### 1. IDENTITY THEFT (CASE NUMBER CR05–1243)

 Appellant argues that venue was improper in Arlington County for the prosecution of an indictment for identity theft listing Iris Keltz as the victim. He contends that *Meeks v.*

---

through CR05–1246, given that he was not convicted in any of these cases.

*Commonwealth,* 274 Va. 798, 651 S.E.2d 637 (2007), controls here and precludes prosecution in the Arlington County courts. We find venue was proper in this case.

■ "When venue is challenged on appeal, we determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" *Morris v. Commonwealth,* 51 Va. App. 459, 464–65, 658 S.E.2d 708, 710–11 (2008) (quoting *Cheng v. Commonwealth,* 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). The evidence in relation to venue proved appellant was arrested in Arlington County while he was in possession of Ms. Keltz's credit card number. Ms. Keltz was a resident of the State of New York and had not visited Arlington County. No evidence established that appellant accessed this number or used it in any particular manner while he was in Arlington County, but he continued to possess not only the stolen number while in Arlington but also the remagging device that he utilized to effect these offenses. He attempted to make a purchase using this credit card number at a store in Alexandria.

■ "Venue depends on the 'nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* at 464, 658 S.E.2d at 711 (quoting *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946)). For most crimes, venue is proper in the jurisdiction where *all* the elements of the crime were committed. *See Green v. Commonwealth,* 32 Va.App. 438, 448, 528 S.E.2d 187, 192 (2000) (finding the Commonwealth must generally establish venue with evidence that supports a strong presumption that all elements of the offense occurred within the selected venue). For prosecution of identity theft, however, the General Assembly enacted a special venue statute, which provides that "the crime shall be considered to have been committed in any locality where the person whose identifying information was appropriated resides, or in which *any part* of the offense took place, regardless of whether the defendant was ever actually in such locality." Code § 18.2–186.3(D) (emphasis added).

Therefore, to satisfy Code § 18.2–186.3(D), the Common-wealth here needed to establish a "strong presumption" that any part of the offense took place in Arlington County. *See Green*, 32 Va.App. at 448, 528 S.E.2d at 192 (noting that, under the general venue statute, that the Commonwealth must establish a "strong presumption" that all elements of the offense occurred within the selected venue); *see also Meeks*, 274 Va. at 803, 651 S.E.2d at 639 (construing Code § 18.2–198.1(i), the credit card theft venue statute, as requiring that the evidence establish a "strong presumption" that an "act in furtherance" of credit card theft occurred within the selected venue).

To consider whether any part of the crime of identity theft occurred in Arlington County, we must look to its elements and the nature of the crime. Appellant was charged in case number CR05–1243 of committing identity theft pursuant to Code § 18.2–186.3, which provides in pertinent part:

It shall be unlawful for any person, without the authoriza-tion or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to: 1. Obtain, record or access identifying information[3] which is not available to the general public that would assist in accessing financial resources, obtaining identification docu-ments, or obtaining benefits of such other person; [or] 2. Obtain goods or services through the use of identifying information of such other person. . . .

Code § 18.2–186.3(A).[4] If any part of this offense occurred in Arlington County, then venue was proper there.

Although the Virginia appellate courts have not previously addressed the venue provision in Code § 18.2–186.3, the Su-

---

**3.** Under Code § 18.2–186.3(C)(vi), a credit card number qualifies as identifying information.

**4.** The indictment in case number CR05–1243 substantially followed this language, with the addition that such conviction would constitute a second or subsequent conviction under Code § 18.2–186.3.

preme Court has addressed a similar venue provision enacted for credit card theft. In *Meeks,* the Supreme Court considered Code § 18.2–198.1, which creates a specific exception to the general venue statute for the crime of credit card theft. The Court considered the elements of credit card theft and found such thefts are "completed where the card or number is unlawfully taken from its rightful owner or is received with knowledge that it has been taken and with the intent to use it, sell it, or transfer it." *Meeks,* 274 Va. at 803, 651 S.E.2d at 640. The Court concluded that venue did not lie in Alexandria, where Meeks retained the credit card after she had stolen it elsewhere, as the act of taking the card (and thus the crime itself) was completed before she arrived in Alexandria. *Id.* at 803–04, 651 S.E.2d at 640. The Supreme Court overruled its prior opinion in *Cheatham v. Commonwealth,* 215 Va. 286, 208 S.E.2d 760 (1974), to the extent that *Cheatham* "wrongly added the element of retention to credit card theft." *Meeks,* 274 Va. at 803, 651 S.E.2d at 639; *see Cheatham,* 215 Va. at 290, 208 S.E.2d at 763 (holding that the word "withhold," as used in the context of the credit card theft statute, "import[s] something more than mere retention").

Appellant argues that *Meeks* controls in this case, and, therefore, the trial court erred in finding venue in Arlington County. *Meeks* does provide guidance for the issue considered here. In a manner similar to the approach used by the Supreme Court in that case, we must also determine whether the identity theft had concluded prior to appellant's arrest in Arlington County. If the crime of identity theft concluded with the taking of the information, then no "part of the offense" could take place after that taking. *See Meeks,* 274 Va. at 803, 651 S.E.2d at 639–40. In such a situation, appellant's possession of the information in Arlington County would be after the completion of the crime, and so venue would not be proper in that county. However, if identity theft is a continuing offense such that parts of the offense can occur after the taking, then venue in Arlington County would be appropriate. *Cf. id.* at 803, 651 S.E.2d at 640 (finding Meeks completed the credit card theft in Fairfax County; therefore,

venue for that crime did not lie in Alexandria where she used the card and was then arrested).

Although *Meeks* does illustrate how an appellate court should approach this issue, its conclusion is not controlling on the different facts and different statute involved here. Identity theft is not credit card theft. Despite its name, the completion of the crime of identity theft is not limited to a discrete moment in time marked by the unlawful taking or receiving of an individual's identifying information. Rather, identity theft can be committed by recording or accessing an individual's identifying information, actions that continue after the initial obtaining of the information, or by obtaining goods through the use of the illegally obtained identifying information. Code § 18.2–186.3(A). Indeed, the very nature of identity theft is that, once an individual's identifying information is stolen, the individual's identity remains stolen by the perpetrator as long as the perpetrator possesses that information with the intent to defraud the victim for his own benefit or for the benefit of another unauthorized individual.

Therefore, we find that, although credit card theft is completed when the card is taken, identity theft continues after the identity is illegally taken from its lawful owner. As the Supreme Court of Washington explained in *State v. Leyda*, 157 Wash.2d 335, 138 P.3d 610 (2006), when discussing units of prosecution, "[O]nce the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information." *Id.* at 345, 138 P.3d at 616. Essentially, the Washington court classified identity theft as a continuing offense. *See id.* at 348, 138 P.3d at 618.

Although not controlling, of course, the rationale expressed in *Leyda* resonates persuasively. The Washington court's description of the continuing nature of identity theft fits nicely with our description of a continuing offense as " 'a continuous, unlawful act or series of acts set on foot by a

single impulse and operated by an unintermittent force, however long a time it may occupy.'" *Morris,* 51 Va.App. at 468, 658 S.E.2d at 712 (quoting *United States v. Midstate Horticultural Company,* 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939)).

The Virginia appellate courts have not specifically addressed the question of whether identity theft under Code § 18.2–186.3(A) constitutes a continuing offense, but an Alabama case, *Ex parte Egbuonu,* 911 So.2d 748 (Ala.Crim.App. 2004), is instructive. There, the Alabama court considered a statute nearly identical to the Virginia identity theft statute [5] and held that "[i]dentity theft, by its definition, is a continuing offense that in most instances will occur in more than one county or even more than one state." *Id.* at 753. The view of the Washington and Alabama courts that classifies identity theft as a continuing offense comports with the holdings of numerous other state appellate courts that have addressed the issue. *See State v. Meza,* 38 Kan.App.2d 245, 165 P.3d 298 (2007); *State v. Mayze* 280 Ga. 5, 622 S.E.2d 836 (2005); *State v. Ramirez,* 246 Wis.2d 802, 633 N.W.2d 656 (Ct.App.2001). We hold that Code § 18.2–186.3 likewise provides for a continuing offense rather than an offense that terminates with the taking of the identifying information.[6]

---

**5.** Ala.Code § 13A–8–192(a), which prohibits identity theft, provides:

> A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:
>
> (1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim [or]
>
> (2) Obtains goods or services through the use of identifying information of the victim.
>
> (3) Obtains information documents in the victim's name.

**6.** The dissent states that identity theft cannot be classified as a continuing offense, because, whereas asportation is an element of the crime of larceny that can cause a larceny to be a continuing offense, no asportation generally occurs with identity theft so that asportation is not, and really cannot generally be, an element of identity theft. It is true that identity theft does not involve the taking of *physical* property from place

Accordingly, we hold that appellant's theft of Ms. Keltz's identity in case number CR05–1243 commenced with his unlawful obtaining of Ms. Keltz's credit card number, included the act of recording and accessing the number, and continued beyond his attempted use of the credit card number at the store in Alexandria, until he was apprehended in Arlington. Our holding here recognizes that identity theft, by its very nature, is a continuing offense against the victim. Once an individual's identifying information is stolen, the offense cannot conclude until the information is returned (so that the perpetrator no longer retains it) and the perpetrator's fraudulent intent to use the identifying information no longer exists.[7] In case number CR05–1243, appellant committed several prohibited acts under Code § 18.2–186.3(A), which comprised one continuing offense of identity theft against Ms. Keltz.

Pursuant to Code § 18.2–186.3(D), we must still decide whether there existed a strong presumption that any part of the continuing offense of identity theft occurred in Arlington County. *Meeks* is again instructive. The distinction between the offense at issue here and the credit card theft offense at

to place. Rather, identity theft is the theft not of goods, but of one's own *identity*, in the form of certain qualifying personal identifying information. An individual such as Ms. Keltz is deprived of exclusive possession of her own identity from the moment the identifying information is illegally obtained with intent to defraud by the perpetrator until the perpetrator relinquishes the information or the victim is otherwise notified of the identity theft. As other state appellate courts holding that identity theft is a continuing offense have remarked, the unusual and highly sophisticated nature of the offense does not easily lend itself to familiar concepts involving the theft of mere chattel. *See Meza*, 165 P.3d at 302 (commenting that identity theft "hardly qualifies as garden-variety theft" as it is "the product of the Information Age").

7. To illustrate the offense's pervasive and continuing nature, Ms. Keltz testified that she was surprised when the Arlington police notified her that the security of the particular credit card number at issue here—as well as other credit card numbers illegally obtained by appellant—had been compromised, because the physical credit card itself was in her wallet; furthermore, Ms. Keltz did not even realize her debit card number had also perhaps been compromised until the day she testified at trial.

issue in *Meeks* is amplified by the Supreme Court's observation that, prior to the overruling of *Cheatham*, "a person could be charged with credit card theft in *every jurisdiction* entered while still *in possession* of the stolen credit card or number with the *intent* to use it." *Meeks*, 274 Va. at 803, 651 S.E.2d at 640 (emphasis added). The overruling of *Cheatham* was necessary because, as discussed above, the crime of credit card theft concludes with the unlawful taking of an individual's credit card or credit card number.

Unlike credit card theft, identity theft is a continuing offense. The offense necessarily continues for as long as the perpetrator is in unlawful possession of the victim's identifying information with the intent to use the victim's identity in a fraudulent manner. In denying appellant's motion to strike on venue grounds, the trial court properly found that appellant possessed Ms. Keltz's identifying information (together with the equipment to record and access this information) while in Arlington County, up to and including the moment he was stopped for speeding in that county. Appellant clearly committed a part of the identity theft, the unlawful possession of Ms. Keltz's identifying information, in Arlington. In addition, the trial court also found that appellant had the intent to defraud Ms. Keltz. The evidence established the strong inference that appellant intended to use Ms. Keltz's information to commit fraud when he possessed it in Arlington County on September 21, 2005, as illustrated by his attempted use of her credit card number earlier that same day, his continuing course of conduct on that day, and his retention of Ms. Keltz's information after his unsuccessful attempt to use it.[8] As Code

---

8. The dissent states that an appropriate analogy to this case would be an instance where a thief "happen[s] to drive through" a county while still possessing the intent to deprive the victim of property, but while the stolen property is not in that county. In such a circumstance, the dissent notes, venue would not be proper in that county. Here, however, appellant both possessed Ms. Keltz's identifying information and had the intent to commit fraud while in Arlington County. Furthermore, the stricter standard for establishing that venue is appropriate in a larceny prosecution is not at issue here, given the enactment by the General Assembly of a venue statute applicable specifically to identity

§ 18.2–186.3(A) includes the intent to defraud as an element of the crime of identity theft, we find the evidence was also sufficient to infer appellant had that intent while he was in Arlington County.

Because appellant unlawfully possessed Ms. Keltz's identifying information and had the intent to defraud her while in Arlington County, we find the evidence sufficiently strong to presume that appellant committed some part of the offense of identity theft while in Arlington County. Accordingly, we conclude there was a strong presumption established that venue was proper in Arlington for the prosecution of case number CR05–1243.

### 2. CREDIT CARD THEFT (CASE NUMBERS CR05–1231 THROUGH CR05–1240)

 Appellant belatedly argues that venue for the credit card theft charges did not lie in Arlington County. He did not raise the issue of venue in relation to the credit card theft charges at trial. *See* Code § 19.2–244 (requiring that questions of venue be raised prior to the verdict). He did not raise this issue in relation to the credit card theft convictions in his petition for appeal. *See* Rule 5A:12 ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals."). No exception applies to either of these rules; therefore, appellant's argument, made for the first time after the appeal was granted, is too late to permit review by this Court.

### B. DOUBLE JEOPARDY (CASE NUMBERS CR05–1241, CR06–452, CR05–1242, AND CR06–451)

 Appellant argues that his simultaneous convictions for identity theft (case number CR05–1241) and credit card fraud (case number CR06–452) were improper because the convic-

theft. As discussed above, the Commonwealth was required to establish only that any part of the offense of identity theft occurred in Arlington in order to establish that venue in Arlington was indeed proper.

tions punished him for the same act/offense twice in a single proceeding, in violation of the principles underlying double jeopardy protections. Appellant also argues that another set of simultaneous convictions, identity theft (case number CR05–1242) and credit card fraud (case number CR06–451), were improper for the same reason.

We have no jurisdiction to consider whether appellant's credit card fraud convictions should be reversed, because appellant failed to include those case numbers on his timely notice of appeal. *See supra* section II. However, the appeal of the identity theft convictions is properly before us. Therefore, we will consider the merits of appellant's argument here, as the remedy would be the reversal of his identity theft convictions.

■■■ The test devised in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), governs our analysis. Under this test, appellate courts must determine " 'whether each [charged offense] requires proof of a fact which the other does not.' " *Coleman v. Commonwealth*, 261 Va. 196, 200, 539 S.E.2d 732, 733 (2001) (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182). If each offense requires, in the abstract, proof of an additional element, then double jeopardy protections do not apply and both convictions will stand. *Id.*

Here, it is clear that each charge constituted a separate crime, and neither conviction punished a lesser-included offense of the other. Stated broadly, the credit card fraud statute criminalizes the act of "obtaining money, goods, services or anything else of value" through the fraudulent use of a credit card or credit card number that was acquired either by means of credit card theft under Code § 18.2–192 or by other fraudulent means. *See* Code § 18.2–195. Identity theft, by contrast, involves the compromised security of several types of identifying information, including credit card numbers. *See* Code § 18.2–186.3(C). Credit card fraud is committed by obtaining money, goods, services, or anything else of value, *see* Code § 18.2–195, whereas identity theft can be

committed by obtaining, recording, or accessing an individual's identifying information, or by obtaining goods or services through the use of the identifying information. *See* Code § 18.2–186.3(A). Furthermore, the amount of loss associated with credit card fraud is limited to the value of "all goods, services, and anything else of value actually furnished," *see* Code § 18.2–195(3), whereas the amount of loss associated with identity theft is not necessarily limited by the value of goods or services fraudulently obtained. *See* Code § 18.2–186.3(D). Therefore, several factors distinguish the two offenses.

 Although appellant accurately notes that he committed the respective crimes in a similar manner, this fact does not render the convictions improper. Under the *Blockburger* test, we examine "'the offenses charged in the abstract, without referring to the particular facts of the case under review.'" *Schwartz v. Commonwealth*, 45 Va.App. 407, 441, 611 S.E.2d 631, 648 (2005) (quoting *Coleman*, 261 Va. at 200, 539 S.E.2d at 734). Viewed in the abstract, identity theft and credit card fraud are separate offenses punishable in a single criminal proceeding. Accordingly, appellant's convictions for identity theft were proper.

### C. DUPLICITY AND JURY UNANIMITY (CASE NUMBERS CR05–1241 AND CR05–1242)

 Appellant next argues that the indictments charging identity theft in case numbers CR05–1241 and CR05–1242 were duplicitous because the two indictments both alleged violations of both subsections of Code § 18.2–186.3(A), which appellant claims created two separate and unrelated offenses. Furthermore, appellant contends that, because the trial court did not compel the Commonwealth to elect one subsection of Code § 18.2–186.3(A) upon which to proceed, and because Jury Instruction 10 pertaining to these charges did not cure the alleged error, it was impossible to determine if the jury unanimously found him guilty using the same specific identity theft offense subsection.

Turning first to appellant's argument with respect to Jury Instruction 10 and jury unanimity, the Commonwealth correctly points out that appellant failed to preserve the issue for appeal. Appellant never raised a jury unanimity contention in the trial court with respect to Jury Instruction 10, relating to identity theft. Although he did raise the issue of duplicity, and "[jury] unanimity is closely related to the issue of duplicity," *United States v. Correa–Ventura*, 6 F.3d 1070, 1081 (5th Cir.1993), the same objection or argument must be made at trial as the one presented on appeal. *See, e.g., Chase v. Commonwealth*, 37 Va.App. 194, 197, 555 S.E.2d 422, 424 (2001). Therefore, appellant's jury unanimity argument is defaulted under Rule 5A:18.

Moreover, we find no basis upon which to conclude that Code § 18.2–186.3(A) is susceptible to duplicitous prosecutions. An indictment "may contain any number of counts charging the commission of a single offense, stated in different ways so as to meet the varying phases of proof that might be offered." *King v. Commonwealth*, 165 Va. 850, 853, 183 S.E. 173, 174 (1936). Therefore, although Code § 18.2–186.3(A) may be violated in different ways, the Commonwealth may allege and prove any one or all of those methods in its attempt to establish a defendant's guilt. Because identity theft is a continuing offense, the thefts here were related, not unrelated. *See Bragg v. Commonwealth*, 42 Va.App. 607, 615, 593 S.E.2d 558, 562 (2004).

We find that the crimes described in Code § 18.2–186.3(A) stem from the same act of identity theft that appellant committed against the victim.[9] Accordingly, we reject appellant's duplicity argument.

### D. WARRANTLESS JAIL CELL SEARCH AND SEIZURE

Appellant argues lastly that the prison officials' pretrial, warrantless search of his jail cell, and the resulting

---

9. In an opinion subsequent to *Ex parte Egbuonu*, the Alabama Court of Criminal Appeals, interpreting an identity theft statute nearly identical to our own Code § 18.2–186.3(A), reached the same conclusion. *See Egbuonu v. State*, 993 So.2d 35 (Ala.Crim.App.2007).

seizure of the Romanian-language documents that he claims were prepared to assist in an unrelated federal matter, violated his Fourth Amendment protection against unlawful search and seizures and his Sixth Amendment right to counsel. We disagree.

The United States Supreme Court has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Megel v. Commonwealth*, 262 Va. 531, 535, 551 S.E.2d 638, 641 (2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). Citing *United States v. Cohen*, 796 F.2d 20 (1986), appellant attempts to differentiate *Megel* and *Hudson* by arguing that those cases apply only to post-trial prisoners rather than to pretrial detainees. However, in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the United States Supreme Court upheld a room search rule against a Fourth Amendment challenge by pretrial detainees. The Court in that case "simply assumed, *arguendo*, that a pretrial detainee retained at least a 'diminished expectation of privacy.' " *Hudson*, 468 U.S. at 525 n. 6, 104 S.Ct. at 3199 n. 6 (quoting *Bell*, 441 U.S. at 557, 99 S.Ct. at 1883).

We see no need to address the distinction between pretrial detainees and post-trial prisoners made by the Second Circuit in *Cohen*, because the documents under dispute here were never placed before the jury. The Commonwealth never even attempted to introduce any of these documents into evidence. Any error by the trial court in denying appellant's Fourth Amendment motion was, therefore, "harmless, and thus excusable," because it "appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Quinn v. Commonwealth*, 25 Va.App. 702, 719, 492 S.E.2d 470, 479 (1997) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)); *see* Code § 8.01–678.

■ Appellant also argues that his right to an attorney-client privilege under the Sixth Amendment was violated by the search and seizure of papers from his jail cell, and this alleged violation requires dismissal of all his convictions. We again disagree with appellant.

■ "The per se [dismissal] rule represents a moral as well as a legal condemnation of such egregious and unequivocal conduct for which sanctions are imposed against the Government as punishment regardless of the defendant's guilt." *United States v. Gartner,* 518 F.2d 633, 637 (2d Cir.1975). "Where, however, the conduct of the Government has not been so manifestly and avowedly corrupt, the courts have applied a different and a less rigid rule which attempts to measure the harm or prejudice, if any, to the defendant rather than punish the prosecutor by freeing the defendant." *Id.*

Here, the Commonwealth's seizure of the materials relating to the federal case—assuming, *arguendo,* that it even implicated the Sixth Amendment—was not the result of egregious conduct and almost certainly did not prejudice appellant's defense. The trial court found the seized materials had no connection to the Arlington charges, were not materials appellant intended to provide to his counsel in this case, and were in fact written with the intent to give to federal authorities. On these facts, we cannot find that dismissal of his convictions was warranted.

## IV. CONCLUSION

For the foregoing reasons, we dismiss appellant's appeal as it pertains to case numbers CR06–440 through CR06–449, CR06–451 through CR06–469, and CR06–752 through CR06–760, and otherwise affirm the trial court.

*Affirmed, in part and dismissed, in part.*

HUMPHREYS, J., concurring, in part, and dissenting, in part.

I concur in the analysis and holding of the majority in this case with respect to all issues in this case save one. I cannot

join the majority's opinion affirming Gheorghiu's conviction for identity theft pursuant to Indictment CR05–1243 because I believe that the Commonwealth failed to prove that Arlington County was the proper venue for prosecution of that offense. Therefore, I respectfully dissent.

"In deciding whether venue in a particular jurisdiction was proved, a court must determine whether the evidence, when viewed in the light most favorable to the Commonwealth, gave rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court.'" *Meeks v. Commonwealth*, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting *Cheng v. Commonwealth*, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). "This may be accomplished by either direct or circumstantial evidence." *Id.* Normally, "venue is appropriate in any jurisdiction where the required elements of the offense have been established." *Green v. Commonwealth*, 32 Va.App. 438, 449, 528 S.E.2d 187, 192 (2000). In cases involving violations of Code § 18.2–186.3, the General Assembly has specifically determined where venue is proper. Code § 18.2–186.3(D) provides that, in such cases, "[t]he crime shall be considered to have been committed [1] in any locality where the person whose identifying information was appropriated resides, or [2] in which any part of the offense took place, regardless of whether the defendant was ever actually in such locality."

The victim in this case, Iris Keltz ("Keltz"), did not reside in Arlington County at the time of the offense. Thus, in order to prove venue, the Commonwealth must have presented evidence creating a strong presumption that some "part of the offense" took place in Arlington. Code § 18.2–186.3 defines the offense of identity theft as:

A. It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to:

1. Obtain, record or access identifying information which is not available to the general public that would assist in

accessing financial resources, obtaining identification documents, or obtaining benefits of such other person.

2. Obtain goods or services through the use of identifying information of such other person. . . .

Therefore, the Commonwealth must have shown that Gheorghiu either (1) obtained, recorded or accessed Keltz's information in Arlington, or (2) that he used Keltz's information to obtain goods or services in Arlington. As the majority concedes, there is no evidence that Gheorghiu obtained, recorded or accessed Keltz's information in Arlington or that he attempted to obtain goods or services there. Given that Ms. Keltz does not live in Arlington, the majority's concession would seem to be dispositive of the issue but, instead, the majority presents two alternative and novel reasons why venue was proper in Arlington.

The majority holds that Gheorghiu "clearly committed a part of the crime, the element of possession" in Arlington because identity theft is a continuing offense and he possessed the credit card information while in Arlington. Possession, however, is not an element of identity theft. Although possession is certainly incidental to the statutory elements, possession is not itself an element of the offense. Had the General Assembly wished to punish the mere possession of someone else's identifying information, it certainly could have done so. However, it chose only to criminalize the acts of obtaining, recording, accessing, and using such information. "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005). Because possession of the identifying information of another is not an element of identify theft, it cannot provide a basis for venue.

Furthermore, identity theft is not a continuing offense that can be prosecuted in any jurisdiction where the offender travels while possessing stolen credit card information. Over

a century ago, our Supreme Court explained the continuing offense doctrine:

> It has been a settled principle of the common law, from an early day, in England, that where property is stolen in one county, and the thief has been found, with the stolen property in his possession, in another county, he may be tried in either. This practice prevailed notwithstanding the general rule that every prosecution for a criminal cause must be in the county where the crime was committed. The exception to the general rule grew out of a fiction of the law, that, where property has been feloniously taken, every act of removal or change of possession by the thief constituted a new taking and asportation. . . .

*Strouther v. Commonwealth,* 92 Va. 789, 791, 22 S.E. 852, 852 (1895) (citing *Cousins's Case,* 29 Va. (2 Leigh) 708 (1830)). The continuing offense doctrine is predicated on the legal fiction that a new larceny occurs every time a thief moves stolen property. That legal fiction is appropriate because asportation is an element of larceny. By contrast, asportation is not an element of identity theft. There is no legal principle, fictional or not, that dictates that every movement by an identity thief constitutes a new identity theft. Identity theft only occurs where someone fraudulently obtains, accesses, records or uses another person's identifying information. *See* Code § 18.2–186.3. Here, none of the statutory elements of the crime occurred in Arlington County, and the fact that Gheorghiu possessed Keltz's credit card information in Arlington does not change that.[10]

Moreover, even if identity theft were a continuing offense, venue would still be improper in Arlington. The general rule

---

10. The majority cites to the Supreme Court of Washington in support of its claim that identity theft is a continuing offense. However, even under that court's view, Arlington would not be a proper venue for this crime. In the case the majority cites, the court specifically held that, in the case of identity theft, the "unit of prosecution" only includes "subsequent proscribed conduct." *State v. Leyda,* 157 Wash.2d 335, 345, 138 P.3d 610, 616 (2006). As previously noted, possession is not proscribed conduct under Code § 18.2–186.3.

of venue is that "venue is appropriate in any jurisdiction where the required elements of the offense have been established." *Green,* 32 Va.App. at 449, 528 S.E.2d at 192. A thief can be prosecuted in every county in which he carries the stolen property because every time he moves the stolen goods to a different jurisdiction, he commits the required elements of larceny—taking and asportation with the intent to permanently deprive the lawful owner thereof. *Commonwealth v. Taylor,* 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998) (listing the elements of larceny). That larceny is a continuing offense does not mean that venue lies wherever a thief travels. Rather, venue is only proper where the thief travels *and* commits larceny, i.e., wherever he commits a new taking by continued asportation of the stolen goods to the detriment of the owner's right to possession. Under Code § 18.2–186.3, venue is proper only where Gheorghiu committed any "part of the offense." Here, Gheorghiu traveled through Arlington, but there is no evidence of any nexus whatever between any of the elements of identity theft and Arlington County.

The majority's remaining basis for holding that the venue was appropriate is that Gheorghiu traveled through Arlington while possessing the intent to "commit fraud." Code § 18.2–186.3. Assuming without agreeing that the evidence proved that Gheorghiu possessed that intent while passing through Arlington, merely having the intent to commit a crime is likewise insufficient to create venue for prosecution. In order for venue to lie in a certain place, "the required elements of the offense" must occur in that place. *Green,* 32 Va.App. at 449, 528 S.E.2d at 192. While intent to defraud is certainly *a* required element of the offense, a particular *mens rea* is not the gravamen of the crime of identity fraud. To hold that venue is proper wherever Gheorghiu intended to commit fraud would be akin to holding that venue is proper for possession with intent to distribute drugs wherever a person intends to distribute drugs, regardless of whether that person ever actually possessed drugs in that locale. *See United States v. Davis,* 666 F.2d 195, 200 (5th Cir.1982) (holding that venue for possession with intent to distribute is improper in Georgia

because the defendant never actually or constructively possessed the drugs in Georgia, despite evidence that the defendant possessed the intent to distribute the drugs while he was in Georgia).

For example, in a larceny prosecution, venue is proper in any locale where "the thief has been found, *with the stolen property in his possession.*" *Strouther*, 92 Va. at 791, 22 S.E. at 852 (emphasis added). That is so, because every time a thief moves the stolen goods, a new larceny occurs. If the thief were to steal a television in Arlington and then take it to his home in Alexandria, venue would be proper in both locations because the elements of larceny occurred in both locations. However, if the thief left the television in Alexandria and drove to Fairfax, he could not be prosecuted in Fairfax, even though he still had the intent to permanently deprive the rightful owner of the television. Fairfax would not be the proper venue because no larceny took place there. It is irrelevant that the thief happened to drive through Fairfax with a larcenous intent. To hold otherwise would be to conclude that a thief can be tried for larceny in any county or city in which he travels *regardless of whether he committed a larceny in that jurisdiction.* Today, the majority holds that Gheorghiu can be prosecuted for identity theft in Arlington even though he did not commit any "part of the offense" in Arlington. Because such a holding would largely render meaningless the basic concept that the proper location for a criminal prosecution is the jurisdiction where the crime actually occurred, that is a holding in which I cannot join.

Simply put, the Commonwealth failed to present evidence that Gheorghiu committed any part of this particular offense of identity theft in Arlington County. Therefore, I would hold that the Commonwealth failed to prove that Arlington County was the proper venue for this charge and reverse the conviction on Indictment CR05–1243 and remand for a new trial in a proper venue if the Commonwealth be so advised.