COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Haley and Beales
Argued by teleconference


MIHAI GHEORGHIU

                                                            OPINION BY
v.        Record No. 0801-07-4                   JUDGE RANDOLPH A. BEALES
                                                          AUGUST 25, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                                   Joanne F. Alper, Judge

          Jonathan Shapiro; J. Frederick Sinclair for appellant.

          Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
          Attorney General, on brief), for appellee.


          An Arlington County jury convicted Mihai Gheorghiu (appellant) of thirty-six counts of

credit card theft, in violation of Code § 18.2-192 (case numbers CR05-1231 through CR05-1240,

CR06-453 through CR06-469, and CR06-752 through CR06-760); eight counts of credit card

forgery, in violation of Code § 18.2-193 (case numbers CR06-441 through CR06-448); five

counts of identity theft, in violation of Code § 18.2-186.3 (case numbers CR05-1241 through

CR05-1243, CR05-1247, and CR05-1248); three counts of credit card fraud, in violation of Code

§ 18.2-195 (case numbers CR06-449, CR06-451, and CR06-452); and one count of possession of

burglarious tools, in violation of Code § 18.2-94 (case number CR06-440).  Appellant challenges

these convictions on several grounds addressed below.  For the following reasons, we affirm in

part and reverse in part.[1]

_____

          [1] Previously, after earlier argument in this case, we dismissed appellant's appeal with
respect to several convictions where he failed to list the case numbers corresponding to these
convictions on his notice of appeal.  However, we since granted appellant's petition for rehearing

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)); see Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004) (viewing the evidence in the light most favorable to the Commonwealth, "as we must since it was the prevailing party in the trial court").

So viewed, the evidence proved that appellant and his cousin traveled in a Chevrolet Trailblazer from New York City to the Northern Virginia area on September 20, 2005. Using his own credit card, appellant paid for a meal in Arlington County and for a hotel room in the City of Alexandria on the night of September 20. Appellant and his cousin checked out of the hotel before noon on the morning of September 21, 2005.

At approximately 8:00 a.m. on September 21, appellant accessed a program file on his laptop computer, interfacing the computer with a "remagger," a device that enables a person to read and write data to the magnetic strip on the back of a plastic card. It is unknown where appellant was when he accessed this program file. Throughout the day, appellant attempted to use stolen credit card numbers to purchase goods and services in Alexandria, Arlington, and Fairfax County, and some of these attempts were successful.

After 4:00 p.m. on September 21, appellant was stopped for speeding in Arlington County. The police officer discovered that appellant had an outstanding warrant in New Jersey and took appellant into custody. Appellant's cousin was permitted to leave on foot. A search of the Trailblazer yielded appellant's laptop, a thumb drive, and five compact discs, all of which

---

and his motion for delayed appeal, and so we withdrew our prior opinion in this case. Therefore, appellant's appeal of all convictions is presently before us.

contained stolen credit card information.  In total, appellant possessed approximately 100 stolen credit card names and numbers.  In addition, twelve credit cards were found in the vehicle, eleven with appellant's name on them, but only three cards had numbers encoded on the magnetic strip that matched the engraved number on the front of the credit card.

During appellant's pre-trial detention, the authorities recorded several phone conversations, mostly in Romanian, apparently discussing credit card fraud and credit card theft. Concerned about ongoing criminal activity, the authorities searched appellant's jail cell and retrieved "foreign language stuff" and credit card sheets.  The authorities attempted to avoid disturbing papers with the letterhead of appellant's attorneys, but appellant claimed that the seized materials written in Romanian related to an ongoing federal investigation.  Appellant claimed that he sought to negotiate a "global settlement" through his assistance with that investigation.  Appellant acknowledged that this information was "not specific to the charges in Arlington County."  After a hearing, the trial court rejected appellant's claims of Fourth and Sixth Amendment violations with respect to the warrantless jail cell search and seizure.

At trial, appellant argued that venue was improper on a number of charges, that the possession of burglarious tools charge should have been stricken, and that the Commonwealth presented insufficient proof that appellant, rather than his cousin, was the perpetrator of the offenses.[2]  The trial court rejected these arguments, and the jury convicted appellant of the aforementioned offenses.

---

[2] Appellant does not pursue this sufficiency of the evidence argument on appeal.

## II. ANALYSIS

### A. VENUE

#### 1. IDENTITY THEFT (CASE NUMBER CR05-1243)

Appellant argues that venue was improper in Arlington County for the prosecution of an indictment for identity theft listing Iris Keltz as the victim. Appellant attempted to make a purchase using Ms. Keltz's credit card number at a store in Alexandria. He contends that Meeks v. Commonwealth, 274 Va. 798, 651 S.E.2d 637 (2007), controls here and precludes prosecution in the Arlington County courts. We find venue was proper in this case.

"When venue is challenged on appeal, we determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Morris v. Commonwealth, 51 Va. App. 459, 464-65, 658 S.E.2d 708, 710-11 (2008) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). The evidence in relation to venue proved appellant was arrested in Arlington County while he was in possession of Ms. Keltz's credit card number. Ms. Keltz was a resident of the State of New York and had not visited Arlington County. No evidence established that appellant newly accessed this number or newly used it in any particular manner while he was in Arlington County, but he continued to possess not only the stolen number while in Arlington but also the remagging device that he utilized to effect these offenses.

"Venue depends on the 'nature of the crime alleged and the location of the act or acts constituting it.'" Id. at 464, 658 S.E.2d at 711 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). For most crimes, venue is proper in the jurisdiction where *all* the elements of the completed crime were committed. See Green v. Commonwealth, 32 Va. App. 438, 448, 528 S.E.2d 187, 192 (2000) (finding the Commonwealth must generally establish venue with evidence that supports a strong presumption that all elements of the offense occurred within the

- 4 -

selected venue).  For prosecution of identity theft, however, the General Assembly enacted a special venue statute, which provides that "the crime shall be considered to have been committed in any locality where the person whose identifying information was appropriated resides, or in which *any part* of the offense took place, regardless of whether the defendant was ever actually in such locality."  Code § 18.2-186.3(D) (emphasis added).  Therefore, to satisfy Code § 18.2-186.3(D), the Commonwealth here needed to establish a "strong presumption" that any part of the offense took place in Arlington County.  See Green, 32 Va. App. at 448, 528 S.E.2d at 192 (noting that, under the general venue statute, the Commonwealth must establish a "strong presumption" that all elements of the offense occurred within the selected venue); see also Meeks, 274 Va. at 803, 651 S.E.2d at 639 (construing Code § 18.2-198.1(i), the credit card theft venue statute, as requiring that the evidence establish a "strong presumption" that an "act in furtherance" of credit card theft occurred within the selected venue).

To consider whether any part of the crime of identity theft occurred in Arlington County, we must look to its elements and the nature of the crime.  Appellant was charged in case number CR05-1243 of committing identity theft pursuant to Code § 18.2-186.3, which provides in pertinent part:

> It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to:
>
> 1. Obtain, record or access identifying information[3] which is not available to the general public that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of such other person; [or]
>
> 2. Obtain goods or services through the use of identifying information of such other person . . . .

---

[3] Under Code § 18.2-186.3(C)(vi), a credit card number qualifies as identifying information.

Code § 18.2-186.3(A).[4] If any part of this offense occurred in Arlington County, then venue was proper there.

Although the Virginia appellate courts have not previously addressed the venue provision in Code § 18.2-186.3, the Supreme Court has addressed a somewhat similar venue provision enacted for credit card theft. In Meeks, the Supreme Court considered Code § 18.2-198.1, which creates a specific exception to the general venue statute for the crime of credit card theft. The Court considered the elements of credit card theft and found such thefts are "completed where the card or number is unlawfully taken from its rightful owner or is received with knowledge that it has been taken and with the intent to use it, sell it, or transfer it." Meeks, 274 Va. at 803, 651 S.E.2d at 640. The Court concluded that venue did not lie in Alexandria, where Meeks retained the credit card after she had stolen it elsewhere, as the act of taking the card (and thus the crime itself) was completed before she arrived in Alexandria. Id. at 803-04, 651 S.E.2d at 640. The Supreme Court overruled its prior opinion in Cheatham v. Commonwealth, 215 Va. 286, 208 S.E.2d 760 (1974), to the extent that Cheatham "wrongly added the element of retention to credit card theft." Meeks, 274 Va. at 803, 651 S.E.2d at 639; see Cheatham, 215 Va. at 290, 208 S.E.2d at 763 (holding that the word "withhold," as used in the context of the credit card theft statute, "import[s] something more than mere retention").

Appellant argues that Meeks controls in this case and, therefore, the trial court erred in finding venue in Arlington County. Meeks does provide guidance for the issue considered here. In a manner similar to the approach used by the Supreme Court in that case, we must also determine whether the identity theft had concluded prior to appellant's arrest in Arlington County. If the crime of identity theft concluded with the taking of the information, then no "part

---

[4] The indictment in case number CR05-1243 substantially followed this language, with the addition that such conviction would constitute a second or subsequent conviction under Code § 18.2-186.3.

of the offense" could take place after that taking.  See Meeks, 274 Va. at 803, 651 S.E.2d at 639-40.  In such a situation, appellant's possession of the information in Arlington County would be after the completion of the crime, and so venue would not be proper in that county.  However, if identity theft is a continuing offense such that parts of the offense can occur after the taking, then venue in Arlington County would be appropriate.  Cf. id. at 803, 651 S.E.2d at 640 (finding Meeks completed the credit card theft in Fairfax County; therefore, venue for that crime did not lie in Alexandria where she used the card and was then arrested).

a. THE CONTINUING NATURE OF AN IDENTITY THEFT OFFENSE

Although Meeks does illustrate how an appellate court should approach this issue, its conclusion is not controlling on the significantly different facts and different statute involved here.  Identity theft is not credit card theft.  Despite its name, the completion of the crime of identity theft is not limited to a discrete moment in time marked by the unlawful taking or receiving of an individual's identifying information.  Rather, identity theft can be committed by recording or accessing an individual's identifying information, actions that continue after the initial obtaining of the information, or by obtaining goods through the use of the illegally obtained identifying information.  Code § 18.2-186.3(A).

Indeed, the very nature of identity theft is that, once an individual's identifying information is stolen, the individual's identity remains stolen by the perpetrator as long as the perpetrator possesses that information with the intent to defraud the victim for his own benefit or for the benefit of another unauthorized individual.  The General Assembly, in enacting the identity theft statute, was aware of the extensive and often continuing harm done to a victim's finances – and financial reputation – resulting from identity theft.  Cf. Code § 18.2-186.3(E) (providing that a defendant convicted of identity theft may be held responsible for restitution

including the cost of correcting errors or inaccuracies in the victim's credit report or other identifying information).

Therefore, we find that, although credit card theft is completed when the card is taken, identity theft continues after the identity is illegally taken from its lawful owner. As the Supreme Court of Washington explained in State v. Leyda, 138 P.3d 610 (Wash. 2006), when discussing units of prosecution, "[O]nce the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information." Id. at 616. Essentially, the Washington court classified identity theft as a continuing offense. See id. at 618. Although not controlling, of course, the rationale expressed in Leyda resonates persuasively. The Washington court's description of the continuing nature of identity theft fits nicely with our description of a continuing offense as "'a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.'" Morris, 51 Va. App. at 467, 658 S.E.2d at 712 (quoting United States v. Midstate Horticultural Company, 306 U.S. 161, 166 (1939)).

The Virginia appellate courts have not specifically addressed the question of whether identity theft under Code § 18.2-186.3(A) constitutes a continuing offense, but an Alabama case, Ex parte Egbuonu, 911 So. 2d 748 (Ala. Crim. App. 2004), is instructive. There, the Alabama court considered a statute nearly identical to the Virginia identity theft statute[5] and held that

---

[5] Ala. Code § 13A-8-192(a), which prohibits identity theft, provides:

> A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:

"[i]dentity theft, by its definition, is a continuing offense that in most instances will occur in more than one county or even more than one state." Id. at 753. The view of the Washington and Alabama courts that classifies identity theft as a continuing offense comports with the holdings of numerous other state appellate courts that have addressed the issue. See State v. Meza, 165 P.3d 298 (Kan. App. 2007); State v. Mayze, 622 S.E.2d 836 (Ga. 2005); State v. Ramirez, 633 N.W.2d 656 (Wis. Ct. App. 2001). We hold that Code § 18.2-186.3 likewise provides for a continuing offense rather than an offense that terminates with the taking of the identifying information.[6]

Accordingly, we hold that appellant's theft of Ms. Keltz's identity in case number CR05-1243 commenced with his unlawful obtaining of Ms. Keltz's credit card number, included the act of recording and accessing the number, and continued beyond his attempted use of the credit card number at the store in Alexandria, until he was apprehended in Arlington still

---

(1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim [or]

(2) Obtains goods or services through the use of identifying information of the victim.

(3) Obtains information documents in the victim's name.

[6] The dissent states that identity theft cannot be classified as a continuing offense, because, whereas asportation is an element of the crime of larceny that can cause a larceny to be a continuing offense, no asportation generally occurs with identity theft so that asportation is not, and really cannot generally be, an element of identity theft. It is true that identity theft does not involve the taking of *physical* property from place to place. Rather, identity theft is the theft not of goods, but of one's own *identity*, in the form of certain qualifying personal identifying information. An individual such as Ms. Keltz is deprived of exclusive possession of her own identity from the moment the identifying information is illegally obtained with intent to defraud by the perpetrator until the perpetrator relinquishes the information or the victim is otherwise notified of the identity theft. As other state appellate courts holding that identity theft is a continuing offense have remarked, the unusual and highly sophisticated nature of the offense does not easily lend itself to familiar concepts involving the theft of mere chattel. See Meza, 165 P.3d at 302 (commenting that identity theft "hardly qualifies as garden-variety theft" as it is "the product of the Information Age").

possessing the victim's identifying information. Our holding here recognizes that identity theft, by its very nature, is a continuing offense against the victim. Once an individual's identifying information is stolen, and the perpetrator possesses the victim's identifying information, the offense cannot conclude until the information is returned to the victim (in such a way that the perpetrator no longer retains it) or the perpetrator's fraudulent intent to use the identifying information no longer exists.[7] In case number CR05-1243, appellant committed several prohibited acts under Code § 18.2-186.3(A), which comprised one continuing offense of identity theft against Ms. Keltz.

b. WHETHER "ANY PART" OF THE CONTINUING OFFENSE OCCURRED IN ARLINGTON

Pursuant to Code § 18.2-186.3(D), we still must determine whether there existed a strong presumption that "any part" of the continuing offense of identity theft occurred in Arlington County. Appellant argues that, even assuming identity theft is a continuing offense, the Commonwealth failed to establish the required strong presumption with respect to Arlington, because the Commonwealth proved only that he attempted to obtain goods or services with Ms. Keltz's identifying information in Alexandria, rather than Arlington. Appellant contends that Code § 18.2-186.3(D) required the Commonwealth to establish the strong presumption that he committed an act proscribed under Code § 18.2-186.3(A) – obtaining, recording, or accessing Ms. Keltz's identifying information, or obtaining goods and services through her identifying information – while in Arlington. Without such a showing, appellant claims, no "part" of the

---

[7] To illustrate the offense's pervasive and continuing nature, Ms. Keltz testified that she was surprised when the Arlington police notified her that the security of the particular credit card number at issue here – as well as other credit card numbers illegally obtained by appellant – had been compromised, because the physical credit card itself was in her wallet; furthermore, Ms. Keltz did not even realize her debit card number had also perhaps been compromised until the day she testified at trial.

offense took place in Arlington under Code § 18.2-186.3(D). We disagree with appellant's analysis.

We recognize, as the trial court recognized below, that the General Assembly enacted a "very broad" special venue provision for identity theft offenses. Code § 18.2-186.3(D) contrasts with, and is a notable exception to, the general venue statute providing that "the prosecution of a criminal case shall be had in the county or city in which *the offense* was committed." Code § 19.2-244 (emphasis added). Green illustrates the vast difference between the general venue provision in Code § 19.2-244 and the special identity theft venue provision in Code § 18.2-186.3(D) at issue here. This Court's opinion in Green is the only previously published appellate opinion in Virginia to mention the phrase "any part of the offense" – which is included in Code § 18.2-186.3(D), but does not appear in Code § 19.2-244 – in the context of venue.

In Green, the defendant was convicted of several drug offenses in the City of Suffolk, including transporting one ounce or more of cocaine into the Commonwealth with the intent to distribute, in violation of Code § 18.2-248.01. Green, 32 Va. App. at 441, 448, 528 S.E.2d at 188-89, 192. The evidence established that a package containing more than an ounce of cocaine entered Virginia, but was intercepted by a drug task force agent in the City of Newport News; by the time the defendant signed for the package in Suffolk, the authorities had removed all but one gram of cocaine. Id. at 442-43, 528 S.E.2d at 189. The defendant argued that venue for the Code § 18.2-248.01 offense was improper in Suffolk because the package did not contain at least one ounce of cocaine when it reached that city. Id. at 446-47, 528 S.E.2d at 191. The Commonwealth contended that venue was proper in Suffolk, because it was a place where "any part of the offense was committed" or, as applied to Code § 18.2-248.01, a jurisdiction where it could be shown that at least some of the drugs intended to be transported into Virginia had been passed. Id. at 447, 528 S.E.2d at 191. This Court rejected the Commonwealth's contention,

- 11 -

holding that venue in Code § 18.2-248.01 prosecutions (governed by the general venue statute, Code § 19.2-244) is proper only in jurisdictions "where the required elements of the offense have been established." Id. at 449, 528 S.E.2d at 192. We concluded that venue was improper in Suffolk on the Code § 18.2-248.01 charge because no evidence established that the completed transportation of one ounce or more of cocaine occurred in that jurisdiction. Id. at 449, 528 S.E.2d at 192-93.

Here, unlike in Green, the Commonwealth was permitted by Code § 18.2-186.3(D) to demonstrate Arlington was an appropriate venue by establishing the strong presumption that "*any part* of the [identity theft] offense" of Ms. Keltz occurred in that county. (Emphasis added). This distinction is greatly significant here. Had Code § 18.2-186.3(D) not existed, and had venue in this case instead been controlled by the general venue statute, the Commonwealth would have been required to establish the strong presumption of a completed offense in Arlington. See Code § 19.2-244. Because Ms. Keltz was not an Arlington resident, the Commonwealth would have been required to establish the strong presumption that, with the intent to defraud, appellant obtained, recorded, or accessed Ms. Keltz's identifying information, see Code § 18.2-186.3(A)(1), or obtained goods or services through her identifying information, see Code § 18.2-186.3(A)(2), while in Arlington. Any one act of obtaining, *or* recording, *or* accessing the identifying information, *or* obtaining goods or services through the identifying information, with the requisite intent to defraud, could potentially have constituted a completed offense of identity theft, but to obtain venue in Arlington under Code § 19.2-244, the Commonwealth would have been required to demonstrate that this completed offense occurred in Arlington.[8]

_____

[8] Otherwise, the Commonwealth would have been required to demonstrate that the victim resided in Arlington, which the parties agree was not the case here.

- 12 -

This is appellant's position, except for his recognition of a clause in Code § 18.2-186.3(D) that the defendant need not ever have been physically present in a locality for venue to be proper there. Appellant devotes much attention to this clause in his supplemental brief. He asserts that this one clause underscores the General Assembly's purpose for enacting the special venue provision for identity theft offenses, which, he claims, was to facilitate prosecutions of computer hackers with remote access to a victim's computer and, therefore, access to a victim's identifying information. Otherwise, appellant contends, the general venue standard of Code § 19.2-244 is essentially unchanged for identity theft offenses.

However, the General Assembly enacted Code § 18.2-186.3(D) specifically for identity theft offenses, and that statute uses precisely the same "any part of the offense" language that was asserted by the Commonwealth in Green, but was rejected there because that was a case where venue actually was governed under Code § 19.2-244. Unlike in Green, the Commonwealth here was not required to establish the strong presumption that a *completed* identity theft occurred in Arlington in order to demonstrate Arlington was an appropriate venue under Code § 18.2-186.3(D). If the General Assembly had intended to require such a showing, Code § 18.2-186.3(D) would have specified that venue for identity theft offenses is proper in any locality "where the person whose identifying information was appropriated resides, or the locality in which [*the offense*] took place, regardless of whether the defendant was ever actually in such locality." To require this demonstration under the actual language of Code § 18.2-186.3(D) would essentially impose the requirements of Code § 19.2-244 on an identity theft proceeding and would, in effect, excise the "any part of the offense" language from Code § 18.2-186.3(D) – which we, as an appellate court, of course, are not permitted to do. See Jackson v. Commonwealth, 274 Va. 630, 634, 652 S.E.2d 111, 113 (2007) ("This Court is not free to ignore language contained in a statute.").

- 13 -

Instead, Code § 18.2-186.3(D) required the Commonwealth here to establish the strong presumption that *any part* of the offense of obtaining, or recording, or accessing the identifying information, or obtaining of goods or services using that identifying information, occurred in Arlington – whether or not appellant was ever physically in Arlington. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court, the required strong presumption that any part of the identity theft offense against Ms. Keltz in case number CR05-1243 occurred in Arlington was established here.

Appellant's argument to the contrary,[9] the possession of a victim's identifying information with the intent to defraud the victim is *a part* of the continuing offense of identity theft. Meeks is again instructive. That case involved the credit card theft statute, which, like the identity theft statute, does not *expressly* prohibit the defendant from "possessing" the victim's credit card or credit card number. See Code § 18.2-192 (prohibiting, in pertinent part, the *taking*, *obtaining*, or *withholding* of a credit card or credit card number "from the person, possession, custody or control of another without the cardholder's consent" (emphasis added)). The

---

[9]Appellant insists that his possession of Ms. Keltz's identifying information in Arlington cannot constitute a "part" of the offense under Code § 18.2-186.3(D) if he did not commit a statutorily prescribed act there while possessing the identifying information. It bears repeating that a "part" of the offense for the purpose of Code § 18.2-186.3(D) need not be the actual obtaining, recording, or accessing of a victim's identifying information, or the obtaining of goods or services using such information, since any one of these acts could constitute a complete offense when done with the intent to defraud. "[W]e must assume that the General Assembly chose, with care, the words it used in enacting the statute," Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001), and, here, it is apparent that the General Assembly carefully inserted the words "any part of the offense" in Code § 18.2-186.3(D) so as to distinguish venue in identity theft cases from venue generally. Otherwise, prosecutions under Code § 18.2-186.3(A)(1), for instance, could be rendered futile for lack of an appropriate venue if no evidence established the precise locality where a victim's identifying information was obtained, recorded, or accessed by an identity thief equipped with remote computer access or otherwise on the move. The General Assembly, in its wisdom, enacted Code § 18.2-186.3(D) to grant the Commonwealth necessary latitude in prosecuting a sophisticated identity theft crime such as appellant committed here.

Supreme Court observed in <u>Meeks</u> that, under its prior opinion in <u>Cheatham</u>, which <u>Meeks</u> overruled, "a person could be charged with credit card theft in *every jurisdiction* entered while still *in possession* of the stolen credit card or number with the *intent* to use it." <u>Meeks</u>, 274 Va. at 803, 651 S.E.2d at 640 (emphasis added). The overruling of <u>Cheatham</u> was necessary because, as discussed above, the crime of credit card theft concludes with the unlawful taking of an individual's credit card or credit card number.

In contrast, unlike credit card theft, which is completed in the locality where the card or number is unlawfully taken from its rightful owner or is received with knowledge that it has been taken and with the intent to use it, identity theft is a continuing offense, as discussed *supra*. The offense necessarily continues for as long as the perpetrator is in unlawful possession of the victim's identifying information with the intent to use the victim's identity in a fraudulent manner, and, therefore, possession of the identifying information with the intent to defraud must be considered a "part" of the offense.

In denying appellant's motion to strike on venue grounds, the trial court properly found that appellant possessed Ms. Keltz's identifying information (together with the equipment to record and access this information) while in Arlington County, up to and including the moment he was stopped for speeding in that county. Appellant clearly committed a part of the identity theft, the unlawful possession of Ms. Keltz's identifying information, in Arlington. In addition, the trial court also found that appellant had the intent to defraud Ms. Keltz. The evidence established a strong inference that appellant intended to use Ms. Keltz's information to commit fraud when he possessed it in Arlington County on September 21, 2005, as illustrated by his attempted use of her credit card number earlier that same day, his continuing course of conduct on that day, and his retention of Ms. Keltz's information after his unsuccessful attempt to use

- 15 -

it.[10]  Code § 18.2-186.3(A) includes the intent to defraud as an element of the crime of identity theft, and we find the evidence was also sufficient to infer appellant had that intent while he was in Arlington County.

Because appellant unlawfully possessed Ms. Keltz's identifying information and had the intent to defraud her while in Arlington County, we find the evidence sufficiently strong to presume that appellant committed a part of the offense of identity theft while in Arlington County.  Accordingly, we conclude there was a strong presumption established that venue was proper in Arlington for the prosecution of case number CR05-1243.

2.  CREDIT CARD FRAUD (CASE NUMBER CR06-449)

Appellant also argues that venue was improper in Arlington County for the prosecution of an indictment for credit card fraud listing Gerald Kent as the victim.  The credit card fraud offense occurred when Mr. Kent's credit card number was used to obtain a laptop computer at a Fairfax County computer store.[11]  Appellant contends that venue was improper in Arlington because the offense in case number CR06-449 was completed in Fairfax, and, he claims, there was no evidence that any act in furtherance of this particular offense occurred in Arlington.

---

[10] The dissent states that an appropriate analogy to this case would be an instance where a thief "happen[s] to drive through" a county while still possessing the intent to deprive the victim of property, but while the stolen property is not in that county.  In such a circumstance, the dissent notes, venue would not be proper in that county.  Here, however, appellant both possessed Ms. Keltz's identifying information and had the intent to commit fraud while in Arlington County.  Furthermore, the stricter standard for establishing that venue is appropriate in a larceny prosecution is not at issue here, given the enactment by the General Assembly of a venue statute applicable specifically to identity theft.  As discussed above, the Commonwealth was required to establish only that any part of the offense of identity theft occurred in Arlington in order to establish that venue in Arlington was indeed proper.

[11] After the fraudulent transaction at the Fairfax computer store, appellant purchased another laptop with Mr. Kent's credit card number, this time at a computer store in Arlington.  Appellant was convicted of credit card fraud for the Arlington offense in case number CR06-452, and he does not challenge venue for that conviction on appeal.

- 16 -

At the time of the offense in case number CR06-449, the special venue statute concerning credit card offenses read, "Notwithstanding the provisions of § 19.2-244, a prosecution for a violation of this article may be had in any county or city in which (i) *any act* in furtherance of the crime was committed or (ii) an issuer or acquirer, or an agent of either, sustained a financial loss as a result of the offense." Code § 18.2-198.1 (emphasis added).[12] The trial court, in considering the "expansive" venue statute here, accepted the Commonwealth's contention that appellant's possession of Mr. Kent's credit card number while in Arlington prior to the offense was "an act in furtherance of" the credit card fraud against Mr. Kent that occurred in Fairfax. See Code § 18.2-198.1(i). Therefore, the trial court found that venue was proper in Arlington.

We must determine on appeal whether the evidence, when viewed in the light most favorable to the Commonwealth, as the party that prevailed below, is sufficient to support the trial court's venue findings. Morris, 51 Va. App. at 464-65, 658 S.E.2d at 710-11. The Commonwealth was required to establish a strong presumption under Code § 18.2-198.1(i) that an act in furtherance of the credit card fraud offense against Mr. Kent in case number CR06-449 occurred in Arlington. See Meeks, 274 Va. at 803, 651 S.E.2d at 639.

Code § 18.2-195 lists the various means by which a defendant commits credit card fraud. Tracking the language of Code § 18.2-195(1)(a), the indictment in case number CR06-449 alleged that appellant used Mr. Kent's credit card number for the purpose of obtaining money, goods, or services and that appellant knew the card had been obtained in violation of Code § 18.2-192 (the credit card theft statute) or was expired or revoked. Although the evidence proved that Mr. Kent's credit card number was unlawfully and fraudulently used to obtain goods

---

[12] Code § 18.2-198.1 was amended in 2008, and a sentence was added providing, "A prosecution for a violation of § 18.2-192 may be had in any county or city where a credit card number is used, is attempted to be used, or is possessed with intent to violate [Code] § 18.2-193, 18.2-195, or 18.2-197."

- 17 -

in Fairfax, venue here is not limited to the locality where the crime was completed, in the manner that venue is limited when Code § 19.2-244 applies. Instead, the special venue statute for credit card offenses was enacted "[n]otwithstanding the provisions of the general venue statute." Code § 18.2-198.1. Pursuant to that special venue statute, we must determine whether there is a strong presumption that *any act* in furtherance of the charged credit card fraud offense here occurred in Arlington.

The phrase "any act in furtherance of the crime" has not yet been interpreted by Virginia's appellate courts in relation to a completed credit card fraud offense, but many cases have discussed acts in furtherance of an offense in other contexts.[13] An act in furtherance of the offense is a direct act toward the commission of an offense, see Tharrington v. Commonwealth, 2 Va. App. 491, 496, 346 S.E.2d 337, 340 (1986), and need not in itself even be criminal or unlawful, see Hodge v. Commonwealth, 7 Va. App. 351, 356, 374 S.E.2d 76, 79 (1988). Under the facts before us here, we find that appellant's possession of Mr. Kent's credit card number in Arlington prior to the credit card fraud offense was an act in furtherance of crime. In order to "use" Mr. Kent's credit card number in a fraudulent manner, see Code § 18.2-195(1)(a), it is axiomatic that he was required to possess the credit card number. Appellant's possession of Mr. Kent's credit card number while in Arlington, therefore, was a direct act toward his subsequent commission of the credit card offense in case number CR06-449.

---

[13] In order to convict a defendant as a principal in the second degree, for instance, it must be proven beyond a reasonable doubt that the defendant shared in the criminal intent or committed some overt act in furtherance of the offense. See Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888-89 (1983). Code § 18.2-198.1 requires a different analysis, as "'venue is not a substantive element of the crime.'" Morris, 51 Va. App. at 469, 658 S.E.2d at 713 (quoting United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987)). Instead, we must determine whether there was a strong presumption that any act in furtherance of the offense occurred in Arlington.

This finding is made clearer still by considering other means by which the Commonwealth may prove a defendant committed credit card fraud. Under Code § 18.2-195(1)(b), a defendant commits credit card fraud when he or she

> [o]btains money, goods, services or anything else of value by representing (i) without the consent of the cardholder that he is the *holder* of a specified card or credit card number or (ii) that he is the *holder* of a card or credit card number and such card or credit card number has not in fact been issued.

(Emphasis added). In Saponaro v. Commonwealth, 51 Va. App. 149, 152, 655 S.E.2d 49, 50 (2008), we defined "holder" in the context of Code § 18.2-195(1)(b) as "one *in possession* of the cardholder's credit card." (Emphasis added). Because the credit card fraud statute concerns both credit cards and credit card numbers, a defendant can also "hold" a credit card number under Code § 18.2-195 by possessing the cardholder's credit card number, for instance, by inserting the credit card number in an electronic device that is in his possession. By possessing the credit card or credit card number, a defendant commits an act in furtherance of the offense of credit card fraud.

Although appellant was charged and convicted under Code § 18.2-195(1)(a), rather than Code § 18.2-195(1)(b), the nature of the offense is similar under both subsections. Rather than obtaining goods by fraudulently representing that he was the holder of the credit card, see Code § 18.2-195(1)(b), appellant fraudulently used Mr. Kent's credit card number to obtain goods, see Code § 18.2-195(1)(a). Without possessing Mr. Kent's credit card number, he could not have used the credit card number in violation of Code § 18.2-195. Appellant's possession of Mr. Kent's credit card number, therefore, was an act in furtherance of the credit card fraud offense.

Furthermore, appellant's possession of many stolen credit card numbers (including Mr. Kent's) must be viewed in the full context of his activities while he was in Virginia. Not

- 19 -

only did appellant possess these credit card numbers, but, as the prosecutor argued in the trial court, he had also assembled a "re-encoding shop" inside his truck. Appellant held these stolen credit card numbers on his laptop, and he readily possessed the means to encode these credit card numbers on fabricated credit cards in order to make the fraudulent purchases. It was through these sophisticated means that appellant – already in possession of Mr. Kent's credit card number – fraudulently used the credit card number in violation of Code § 18.2-195. Appellant's possession of the stolen credit card number while in Arlington was clearly an act in furtherance of this crime.

Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, we agree with the trial court that appellant's possession of Mr. Kent's credit card number in Arlington created the requisite strong presumption that an act in furtherance of this particular credit card fraud offense occurred in Arlington, as required by Code § 18.2-198.1(i). Accordingly, we affirm appellant's credit card fraud conviction in case number CR06-449.

### 3. CREDIT CARD THEFT (CASE NUMBERS CR05-1231 THROUGH CR05-1240, CR06-453 THROUGH CR06-469, AND CR06-752 THROUGH CR06-760)

Appellant belatedly argues that venue for all credit card theft charges did not lie in Arlington County. He did not raise the issue of venue in relation to the credit card theft charges at trial. See Code § 19.2-244 (requiring that questions of venue be raised prior to the verdict). He did not raise this issue in relation to the credit card theft convictions in his petition for appeal. See Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals."). No exception applies to these requirements in Code § 19.2-244 or in Rule 5A:12; therefore, appellant's argument, made for the first time after the appeal was granted, is too late to permit review by this Court.

- 20 -

B.  DOUBLE JEOPARDY (CASE NUMBERS CR05-1241, CR06-452, CR05-1242, AND CR06-451)

Appellant argues that his simultaneous convictions for identity theft (case number CR05-1241) and credit card fraud (case number CR06-452) were improper because the convictions punished him for the same act/offense twice in a single proceeding, in violation of the principles underlying double jeopardy protections.  Appellant also argues that another set of simultaneous convictions, identity theft (case number CR05-1242) and credit card fraud (case number CR06-451), were improper for the same reason.  We hold no violation of double jeopardy principles occurred here.

The test devised in Blockburger v. United States, 284 U.S. 299, 304 (1932), governs our analysis.  Under this test, appellate courts must determine "'whether each [offense charged] requires proof of an additional fact which the other does not.'"  Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (quoting Blockburger, 284 U.S. at 304) (brackets in original).  If each offense requires, in the abstract, proof of an additional element, then double jeopardy protections do not apply and both convictions will stand.  Id.

Here, it is clear that each charge constituted a separate crime, and neither conviction punished a lesser-included offense of the other.  Stated broadly, the credit card fraud statute criminalizes the act of "obtaining money, goods, services or anything else of value" through the fraudulent use of a credit card or credit card number that was acquired either by means of credit card theft under Code § 18.2-192 or by other fraudulent means.  See Code § 18.2-195.  Identity theft, by contrast, involves the compromised security of several types of identifying information, including credit card numbers.  See Code § 18.2-186.3(C).  Credit card fraud is committed by obtaining money, goods, services, or anything else of value, see Code § 18.2-195, whereas identity theft can be committed by obtaining, recording, or accessing an individual's identifying information, or by obtaining goods or services through the use of the identifying information, see

Code § 18.2-186.3(A). Furthermore, the amount of loss associated with credit card fraud is limited to the value of "all goods, services, and anything else of value actually furnished," see Code § 18.2-195(3), whereas the amount of loss associated with identity theft is not necessarily limited by the value of goods or services fraudulently obtained, see Code § 18.2-186.3(D). Therefore, several factors distinguish the two offenses.

Although appellant accurately notes that he committed the respective crimes in a similar manner, this fact does not render the convictions improper. Under the Blockburger test, we examine "'the offenses charged in the abstract, without referring to the particular facts of the case under review.'" Schwartz v. Commonwealth, 45 Va. App. 407, 441, 611 S.E.2d 631, 648 (2005) (quoting Coleman, 261 Va. at 200, 539 S.E.2d at 734). Viewed in the abstract, identity theft and credit card fraud are separate offenses punishable in a single criminal proceeding. Accordingly, appellant's convictions for identity theft and for credit card fraud were proper.

### C. POSSESSION OF BURGLARIOUS TOOLS (CASE NUMBER CR06-440)

Appellant argues that the trial court erroneously denied his motion to strike a charge of possession of burglarious tools, in violation of Code § 18.2-94. The charge related to appellant's possession of electronic devices, such as the laptop and the remagging device, that he used to record and encode the victims' identifying information on the fabricated credit cards. Appellant contends that Code § 18.2-94 is not applicable to statutory offenses involving the credit card crimes for which he was convicted. Therefore, appellant contends that his conviction under Code § 18.2-94 was improper.[14]

"If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5

---

[14] Appellant suggests that the Commonwealth might more appropriately have charged him with possession of credit card forgery devices, in violation of Code § 18.2-196.

- 22 -

felony." Code § 18.2-94. Therefore, Code § 18.2-94 prohibits the possession of a tool, implement or outfit "with the requisite intent" to commit burglary, robbery, or larceny. Edwards v. Commonwealth, 53 Va. App. 402, 408-09, 672 S.E.2d 894, 897 (2009) (en banc). If the Commonwealth failed to demonstrate this requisite intent to commit burglary, robbery, or larceny, then it would logically follow that the Commonwealth failed to prove beyond a reasonable doubt that appellant committed an offense under Code § 18.2-94.

The Commonwealth did not charge appellant with burglary, robbery, or larceny; however, the Commonwealth contends the evidence proved that appellant possessed the laptop and remagger device "with a larcenous intent to steal." Ample evidence established the inference that appellant intended to defraud his victims, but whether appellant intended to commit larceny is a separate matter. Larceny, a common law crime, is "the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner of that property." Britt v. Commonwealth, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008). At no time during appellant's trial did the Commonwealth establish that he intended to commit common law larceny.

In Scott v. Commonwealth, 36 Va. App. 276, 281, 549 S.E.2d 624, 626 (2001), we considered whether two counts of credit card theft should have been merged with one count of petit larceny under the single larceny doctrine. In holding that the trial court appropriately declined to merge the three counts into a single larceny, we reviewed the common law rule that only a credit card itself – and not the line of credit it represented – could be the subject of larceny. Id. at 281, 549 S.E.2d at 626. We held that the General Assembly enacted the credit card theft statute, Code § 18.2-192, with the intent to create "a very distinct offense, different from and in abrogation of, the common law offense of larceny." Id. Furthermore, we held that petit larceny is not a lesser-included offense of credit card theft. Id. at 282, 549 S.E.2d at

626-27. It is clear under Scott, therefore, that credit card theft is a different offense than common law larceny. Thus, in proving appellant had the intent to commit credit card fraud, the Commonwealth did not also prove that he intended to commit common law larceny.

While appellant fraudulently obtained (or attempted to obtain) goods or services using stolen credit card numbers, these statutorily enacted offenses constituted different crimes than common law larceny. These offenses are also unlike the crime of obtaining money by false pretenses. A person who obtains money by false pretenses is deemed guilty of larceny, see Code § 18.2-178, and multiple charges of obtaining money by false pretenses are appropriately merged under the single larceny doctrine, see Millard v. Commonwealth, 34 Va. App. 202, 206, 539 S.E.2d 84, 86 (2000). Here, the Commonwealth provides no real basis for its contention that appellant actually intended to commit common law larceny – as opposed to the crime for which he was charged – other than its claim that appellant vaguely intended "to steal."

Therefore, the Commonwealth failed to establish that appellant possessed the laptop and remagging device with the intent to commit burglary, robbery, or larceny.[15] Consequently, we reverse appellant's conviction for possession of burglarious tools and dismiss the charge.

D. DUPLICITY AND JURY UNANIMITY (CASE NUMBERS CR05-1241 AND CR05-1242)

Appellant next argues that the indictments charging identity theft in case numbers CR05-1241 (involving Gerald Kent) and CR05-1242 (involving Iris Keltz) were duplicitous because the two indictments both alleged violations of both subsections of Code § 18.2-186.3(A), which appellant claims created two separate and unrelated offenses. Furthermore, appellant contends that, because the trial court did not compel the Commonwealth to elect one subsection of Code § 18.2-186.3(A) upon which to proceed, and because Jury

---

[15] Because we hold that the Commonwealth failed to establish the requisite intent under Code § 18.2-94 to commit burglary, robbery, or larceny, we need not consider whether the laptop and remagging device constituted tools, implements, or outfits under Code § 18.2-94.

Instruction 10 pertaining to these charges did not cure the alleged error, it was impossible to determine if the jury unanimously found him guilty using the same specific identity theft offense subsection.

Turning first to appellant's argument with respect to Jury Instruction 10 and jury unanimity, the Commonwealth correctly points out that appellant failed to preserve the issue for appeal. Appellant never raised a jury unanimity contention in the trial court with respect to Jury Instruction 10, relating to identity theft. Although he did raise the issue of duplicity, and "[jury] unanimity is closely related to the issue of duplicity," United States v. Correa-Ventura, 6 F.3d 1070, 1081 (5th Cir. 1993), the same objection or argument must be made at trial as the one presented on appeal. See, e.g., Chase v. Commonwealth, 37 Va. App. 194, 197, 555 S.E.2d 422, 424 (2001). Therefore, appellant's jury unanimity argument is defaulted under Rule 5A:18.

Moreover, we find no basis upon which to conclude that Code § 18.2-186.3(A) is susceptible to duplicitous prosecutions here. An indictment "may contain any number of counts charging the commission of a single offense, stated in different ways so as to meet the varying phases of proof that might be offered." King v. Commonwealth, 165 Va. 850, 853, 183 S.E. 173, 174 (1936). Therefore, although Code § 18.2-186.3(A) may be violated in different ways, the Commonwealth may allege and prove any one or all of those methods in its attempt to establish a defendant's guilt. Because identity theft is a continuing offense, the thefts here were related, not unrelated. See Bragg v. Commonwealth, 42 Va. App. 607, 615, 593 S.E.2d 558, 562 (2004).

We find that the crimes described in Code § 18.2-186.3(A) stem from the same act of identity theft that appellant committed against the victim.[16] Accordingly, we reject appellant's duplicity argument.

---

[16] In an opinion subsequent to Ex parte Egbuonu, the Alabama Court of Criminal Appeals, interpreting an identity theft statute nearly identical to our own Code § 18.2-186.3(A),

## E. WARRANTLESS JAIL CELL SEARCH AND SEIZURE

Appellant argues lastly that the prison officials' pre-trial, warrantless search of his jail cell, and the resulting seizure of the Romanian-language documents that he claims were prepared to assist in an unrelated federal matter, violated his Fourth Amendment protection against unlawful search and seizures and his Sixth Amendment right to counsel. We disagree.

The United States Supreme Court has held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Megel v. Commonwealth, 262 Va. 531, 535, 551 S.E.2d 638, 641 (2001) (citing Hudson v. Palmer, 468 U.S. 517, 526 (1984)). Citing United States v. Cohen, 796 F.2d 20 (2d Cir. 1986), appellant attempts to differentiate Megel and Hudson by arguing that those cases apply only to post-trial prisoners rather than to pre-trial detainees. However, in Bell v. Wolfish, 441 U.S. 520 (1979), the United States Supreme Court upheld a room search rule against a Fourth Amendment challenge by pre-trial detainees. The Court in that case "simply assumed, *arguendo*, that a pretrial detainee retained at least a 'diminished expectation of privacy.'" Hudson, 468 U.S. at 525 n.6 (quoting Bell, 441 U.S. at 557).

We see no need to address the distinction between pre-trial detainees and post-trial prisoners made by the Second Circuit in Cohen, because the documents under dispute here were never placed before the jury. The Commonwealth never even attempted to introduce any of these documents into evidence. Therefore, even assuming without deciding that the trial court's denial of appellant's Fourth Amendment motion was error, any such error was, consequently,

---

reached the same conclusion. See Egbuonu v. State, 993 So.2d 35, 42-45 (Ala. Crim. App. 2007).

"harmless, and thus excusable," because it "appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Quinn v. Commonwealth, 25 Va. App. 702, 719, 492 S.E.2d 470, 479 (1997) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)); see Code § 8.01-678.

Appellant also argues that his right to an attorney-client privilege under the Sixth Amendment was violated by the search and seizure of papers from his jail cell and that, therefore, this alleged violation requires dismissal of all his convictions. We again disagree with appellant, who essentially argues that the per se dismissal rule applies to his case and requires this result. "The per se [dismissal] rule represents a moral as well as a legal condemnation of such egregious and unequivocal conduct for which sanctions are imposed against the Government as punishment regardless of the defendant's guilt." United States v. Gartner, 518 F.2d 633, 637 (2d Cir. 1975).

Here, we disagree with appellant's basic premise on his Sixth Amendment argument. Dismissal is rarely the appropriate remedy when faced with a violation of the right to counsel. See United States v. Morrison, 449 U.S. 361 (1981). "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Id. at 364. The Supreme Court of the United States has explained, "[T]he remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant [has been] convicted." Id. at 365. "More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." Id. Dismissal may only be appropriate where there is "continuing prejudice" which cannot "be remedied by a new trial or suppression of evidence." Id. at 366 n.2. Logic

would seem to dictate that dismissal would be even less appropriate as a sanction when, as here, the alleged misconduct related to an entirely different case, being prosecuted by a different sovereign – the government of the United States.

Here, furthermore, the Commonwealth's seizure of the materials relating to the federal case – assuming, *arguendo*, that it even implicated the Sixth Amendment – was not the result of egregious conduct and certainly did not prejudice appellant's defense. The trial court found the seized materials had no connection to these charges in Arlington, were not materials appellant intended to provide to his counsel in this case, and were in fact written with the intent to give to federal authorities. Given that the trial court's findings here were certainly not plainly wrong, dismissal of appellant's convictions, as he requests, simply is not warranted.

IV. CONCLUSION

For the foregoing reasons, we reverse and dismiss appellant's conviction for possession of burglarious tools in case number CR06-440, and we otherwise affirm the trial court.

Affirmed in part,
and reversed and
dismissed in part.

Humphreys, J., concurring, in part, and dissenting, in part.

I join entirely in the analysis and holding of the majority in regard to all issues presented, except for the questions raised by Gheorghiu regarding venue.[17] I disagree with the analysis and judgment of the majority that venue was proper in case number CR05-1243, charging Gheorghiu with identity theft, or case number CR06-449, charging Gheorghiu with credit card fraud. Therefore, I respectfully dissent on those two issues.

## I. Identity Theft

I cannot join the majority's opinion affirming Gheorghiu's conviction for identity theft pursuant to case number CR05-1243 because I believe that the Commonwealth failed to prove that Arlington County was the proper venue for prosecution of that offense.

"In deciding whether venue in a particular jurisdiction was proved, a court must determine whether the evidence, when viewed in the light most favorable to the Commonwealth,

---

[17] With respect to the issue presented regarding Gheorghiu's conviction for possession of burglarious tools, as the majority notes, the Attorney General offered no serious argument that, given our holdings in Edwards v. Commonwealth, 53 Va. App. 402, 408-09, 672 S.E.2d 894, 897 (2009) (en banc); Scott v. Commonwealth, 36 Va. App. 276, 549 S.E.2d 624 (2001); and Millard v. Commonwealth, 34 Va. App. 202, 539 S.E.2d 84 (2000), the laptop and remagger could constitute "implements, tools or an outfit" to facilitate commission of the offense of larceny, as opposed to other possible statutory offenses, except to repeatedly assert that two of the statutory offenses Gheorghiu was charged with used the word "theft" in their title and conceded that prosecution might have been more appropriate under Code § 18.2-196(1)(b) for criminal possession of credit card forgery devices (prohibiting the possession "with knowledge of its character, machinery, plates or any other contrivance designed to reproduce instruments purporting to be credit cards . . .").

I agree entirely with the analysis and judgment of the majority in holding that the evidence presented was insufficient given the offense charged in the indictment. I am well aware that the Attorney General bears no responsibility for the charging decision in most criminal cases. However, I digress to emphasize this point because it aptly illustrates what this Court has observed with increasing frequency - either an inexcusable lack of awareness by many prosecutors of the existence of statutes that the General Assembly has seen fit to tailor to specific conduct or the failure of many of the Commonwealth's prosecutors to effectively review the appropriateness of the charges before presenting indictments to a grand jury. See, e.g., Clark v. Commonwealth, 54 Va. App. 120, 141 n.11, 676 S.E.2d 332, 343 n.11 (2009) (en banc) (Humphreys, J., dissenting).

gave rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court.'" Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). "This may be accomplished by either direct or circumstantial evidence." Id. Normally, "venue is appropriate in any jurisdiction where the required elements of the offense have been established." Green v. Commonwealth, 32 Va. App. 438, 449, 528 S.E.2d 187, 192 (2000). In cases involving violations of Code § 18.2-186.3, the General Assembly has specifically determined where venue is proper. Code § 18.2-186.3(D) provides that, in such cases, "[t]he crime shall be considered to have been committed [1] in any locality where the person whose identifying information was appropriated resides, or [2] in which any part of the offense took place, regardless of whether the defendant was ever actually in such locality."

The victim in this case, Iris Keltz ("Keltz"), did not reside in Arlington County at the time of the offense. Thus, in order to prove venue, the Commonwealth must have presented evidence creating a strong presumption that some "part of the offense" took place in Arlington. Code § 18.2-186.3 defines the offense of identity theft as follows:

> A. It shall be unlawful for any person, without the authorization or permission of the person or persons who are the subjects of the identifying information, with the intent to defraud, for his own use or the use of a third person, to:
>
> 1. *Obtain, record or access* identifying information which is not available to the general public that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of such other person.
>
> 2. *Obtain* goods or services through the use of identifying information of such other person . . . .

(Emphasis added.)

- 30 -

Therefore, for prosecution to be proper in Arlington County, the Commonwealth must show that Gheorghiu either (1) obtained, recorded or accessed Keltz's information in Arlington, or (2) that he used Keltz's information to obtain goods or services in Arlington. As the majority concedes, there is no evidence supporting either conclusion. Given that Ms. Keltz does not live in Arlington, the majority's concession would seem to be dispositive of the issue but, instead, the majority presents two alternative and quite novel reasons why venue was proper in Arlington.

The majority's first approach to finding venue to have been proper in Arlington is that Gheorghiu "clearly committed a part of the identity theft, the unlawful possession of Ms. Keltz's identifying information" in Arlington. Its secondary theory is that identity theft is a continuing offense and he possessed the credit card information while in Arlington.

Insofar as the majority's first holding is concerned, in my view the word "part" as used in Code § 18.2-186.3(D) is simply a synonym for the term "element" and, in context, it seems obvious to me that the General Assembly intended for venue to lie in any jurisdiction where it could be established that an act constituting an element of the offense occurred. Possession, though, is not an element of identity theft. Although possession is certainly incidental to the statutory elements, as it is with any number of offenses, possession is not itself an element of the offense. Had the General Assembly wished to punish the mere possession of someone else's identifying information, it certainly could have done so. However, it chose only to criminalize the acts of obtaining, recording, accessing, and using such information or obtaining goods or services through the use of such information. "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005). In the case of identity theft, the General Assembly has required that some "part of the offense" occur in a locality in order for that locality to have jurisdiction.

- 31 -

Because possession of the identifying information of another is not an element of identity theft, it is not "part" of that offense and cannot, standing alone, provide a basis for venue.

Furthermore, and contrary to the holding of the majority, neither is identity theft a continuing offense that can be prosecuted in any jurisdiction where the offender travels while possessing stolen credit card information. Over a century ago, our Supreme Court explained the continuing offense doctrine:

> It has been a settled principle of the common law, from an early day, in England, that where property is stolen in one county, and the thief has been found, with the stolen property in his possession, in another county, he may be tried in either. This practice prevailed notwithstanding the general rule that every prosecution for a criminal cause must be in the county where the crime was committed. The exception to the general rule grew out of a fiction of the law, that, where property has been feloniously taken, *every act of removal or change of possession by the thief constituted a new taking and asportation . . . .*

Strouther v. Commonwealth, 92 Va. 789, 791, 22 S.E. 852, 852 (1895) (citing Cousins's Case, 29 Va. (2 Leigh) 708 (1830)) (emphasis added). Thus, in the case of a larceny, the continuing offense doctrine is predicated on the legal fiction that a new larceny occurs every time a thief moves stolen property. That legal fiction is appropriate because asportation is an element of larceny. By contrast, asportation is not an element of identity theft. There is no legal principle, fictional or not, that dictates that every movement by an identity thief constitutes a new offense of identity theft. Identity theft only occurs where and when someone fraudulently obtains, accesses, records or uses another person's identifying information. See Code § 18.2-186.3. While possession is necessarily incident to obtaining, accessing, recording or using identifying information, the crime is not complete upon the mere possession of the information because the elements of this particular crime require activity by the perpetrator that is active in nature rather than passive. Put another way, while possession of identifying information may be a

- 32 -

consequence of, or a predicate to, several of the required elements, standing alone it is not sufficient to constitute any of them.

Here, in contrast to the continuing offense of common law larceny, *none* of the acts that constitute the statutory elements of the crime occurred in Arlington County, and the fact that Gheorghiu possessed Keltz's credit card information in Arlington does not change that.[18] Moreover, even if identity theft were a continuing offense, venue would still be improper in Arlington. The general rule of venue is that "venue is appropriate in any jurisdiction where the required *elements* of the offense have been established." Green, 32 Va. App. at 449, 528 S.E.2d at 192 (emphasis added). A thief can be prosecuted in every county in which he carries the stolen property because every time he moves the stolen goods to a different jurisdiction, he commits all of the required elements of larceny – taking and asportation with the intent to permanently deprive the lawful owner thereof. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998) (listing the elements of larceny). That larceny is a continuing offense does not mean that venue lies wherever a thief travels. Rather, venue is only proper where the thief travels *and* commits larceny, i.e., wherever he commits a new taking by continued asportation of the stolen goods to the detriment of the owner's right to possession.[19] Under Code

---

[18] The majority cites to the Supreme Court of Washington in support of its claim that identity theft is a continuing offense. However, even under that court's analysis, Arlington would not be a proper venue for this crime. In the case the majority cites, the court specifically held that, in the case of identity theft, the "unit of prosecution" only includes "subsequent proscribed conduct." State v. Leyda, 138 P.3d 610, 616 (Wash. 2006). As previously noted, possession is not proscribed conduct under Code § 18.2-186.3.

[19] The majority responds to this analogy by noting that Gheorghiu was not charged with larceny but rather with identity theft which "does not involve the taking of physical property" but rather "of one's own identity." Whether this metaphysical approach to statutory construction is appropriate is a debate for another day. My point is simply that while a new larceny occurs when stolen property is carried from place to place, the same is not true of identity theft. The crime of identity theft was complete when Gheorghiu obtained Ms. Keltz's identifying information. Though he would have committed a new offense of identity theft each time he accessed that information or obtained goods or services using it, the plain language of the statute

§ 18.2-186.3, venue is proper only where Gheorghiu committed any "part of the offense." Here, Gheorghiu traveled through Arlington, but there is no evidence of any nexus whatever between any of the statutory elements of identity theft and Arlington County.

The majority's remaining basis for holding that venue was appropriate in Arlington County is that Gheorghiu traveled through Arlington while possessing the intent to "commit fraud." Code § 18.2-186.3. Assuming without agreeing that the evidence proved that Gheorghiu possessed that intent while speeding through Arlington, merely having the intent to commit a crime is likewise insufficient to create venue for prosecution. Generally, in order for venue to lie in a particular place, "*the* required *elements* of the offense" must occur in that place. Green, 32 Va. App. at 449, 528 S.E.2d at 192 (emphasis added). While intent to defraud must certainly be proven, a particular *mens rea* is not the gravamen of the crime of identity fraud. Thus, the nature of any continuing offense is that *all* of the required elements have occurred in each place where prosecution is sought. Even in light of the more relaxed standard for venue found in Code § 18.2-186.3, to hold that venue is proper wherever Gheorghiu intended to commit fraud, without more, would be akin to holding that venue is proper for possession with intent to distribute drugs wherever a person intends to distribute drugs, regardless of whether that person ever actually possessed drugs in that locale. See United States v. Davis, 666 F.2d 195, 200 (5th Cir. 1982) (holding that venue for possession with intent to distribute is improper in Georgia because the defendant never actually or constructively possessed the drugs in Georgia, despite evidence that the defendant possessed the intent to distribute the drugs while he was in Georgia).

For example, in a larceny prosecution, venue is proper in any locale where "the thief has been found, *with the stolen property in his possession*." Strouther, 92 Va. at 791, 22 S.E. at 852

---

makes it clear that the offense of identity theft is not committed continuously simply by virtue of the continued possession of identifying information, whether it was stored on a computer or simply committed to memory.

(emphasis added). That is so, because every time a thief moves the stolen goods, a new larceny occurs. If the thief were to steal a television in Arlington and then take it to his home in Alexandria, venue would be proper in both locations because the elements of larceny occurred in both locations. However, if the thief left the television in Alexandria and drove to Fairfax, he could not be prosecuted in Fairfax, even though he still had the intent to permanently deprive the rightful owner of the television. Fairfax would not be the proper venue because no larceny took place there. It is irrelevant that the thief happened to drive through Fairfax with a larcenous intent. To hold otherwise would be to conclude that a thief can be tried for larceny in any county or city in which he travels *regardless of whether he committed a larceny in that jurisdiction*. Today, the majority holds that Gheorghiu can be prosecuted for identity theft in Arlington even though he did not commit any "part of the offense" in Arlington. Because such a holding would largely render meaningless the basic concept that the proper location for a criminal prosecution is the jurisdiction where the crime actually occurred, that is a holding in which I cannot join.

Simply put, the Commonwealth failed to present evidence that Gheorghiu committed any element of this particular offense of identity theft in Arlington County. Therefore, I would hold that the Commonwealth failed to prove that Arlington County was the proper venue for this charge and reverse the conviction on case number CR05-1243 and remand for a new trial in a proper venue if the Commonwealth be so advised.

## II. Credit Card Fraud

Furthermore, though for different reasons, I cannot join the majority's opinion affirming Gheorghiu's conviction for credit card fraud pursuant to case number CR06-449, because I believe that the Commonwealth failed to establish venue by proving that Gheorghiu committed an "act in furtherance" of that crime in Arlington County.

- 35 -

At the time of Gheorghiu's offense, Code § 18.2-198.1 provided that a prosecution for credit card fraud "may be had in any county or city in which (i) any act in furtherance of the crime was committed or (ii) an issuer or acquirer, or an agent of either, sustained a financial loss as a result of the offense." The majority holds that, by possessing Gerald Kent's ("Kent") credit card information in Arlington County, Gheorghiu committed an act in furtherance of the crime of credit card fraud. I disagree.

The phrase "act in furtherance of the crime" has never been defined with respect to Code § 18.2-198.1. However, as the General Assembly was surely aware when they included those words in the statute, this phrase is a common term of art in the Commonwealth's jurisprudence relating to the crime of attempt. An attempt occurs when a person intends to commit a crime and commits "'any slight act done in furtherance of this intent.'" Parsons v. Commonwealth, 32 Va. App. 576, 583, 529 S.E.2d 810, 813 (2000) (quoting Siquina v. Commonwealth, 28 Va. App. 694, 701, 508 S.E.2d 350, 353 (1998)). Under the law of attempt, the act in furtherance of the crime "need not be the last proximate act toward completion, but 'it must go beyond mere preparation and be done to produce the intended result.'" Id. (quoting Siquina, 28 Va. App. at 701, 508 S.E.2d at 353). Thus, to constitute an act in furtherance, "[t]here must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." Id. (quoting Siquina, 28 Va. App. at 701, 508 S.E.2d at 353). "The distinction is that preparation 'consists in devising or arranging the means or measures necessary for the commission of the offense and [] the attempt is a direct movement towards the commission after the preparations are made.'" Ashford v. Commonwealth, 47 Va. App. 676, 682, 626 S.E.2d 464, 467 (2006) (quoting Martin v. Commonwealth, 195 Va. 1107, 1111, 81 S.E.2d 574, 577 (1954)).

Here, Gheorghiu was charged with using Kent's credit card number for the purpose of obtaining money, goods, or services, in violation of Code § 18.2-195. It is undisputed that Gheorghiu did not use Kent's credit card number while in Arlington County. The evidence proved that, while in Arlington County, Gheorghiu did nothing more than possess Kent's credit card number. Although I agree with the majority that, without possessing Kent's credit card or credit card number, Gheorghiu could not have committed that crime, based upon the substantial body of precedent that construes the phrase "act in furtherance of the crime," I do not believe the General Assembly intended a different meaning in the context of Code § 18.2-198.1 and, thus, mere possession cannot be sufficient to establish venue in Arlington. In my view, merely holding the card in his possession is nothing more than "devising or arranging the means or measures necessary for the commission of the offense." Id. As such, possessing credit card information is merely a preparatory step and is not sufficient to constitute an act in furtherance of the crime. Adding strength to this analysis, as the majority notes, in 2008 the General Assembly expanded Code § 18.2-198.1 to allow for venue in any locality where a credit card number is "possessed with intent to" commit credit card fraud. That addition to the venue statute is yet another clear indication that the General Assembly did not intend for possession to be sufficient to establish venue under the original statute in effect at the time of Gheorghiu's trial. Had the original statute allowed prosecution in any venue in which the accused merely possessed a stolen credit card number as the majority holds today, the 2008 amendment would have been entirely unnecessary.[20]

---

[20] I recognize that the 2008 amendment would arguably permit Gheorghiu to be retried for credit card fraud in Arlington County since statutory amendments that are procedural in nature are prospective from their enactment and not from the date of the offense. See Code § 1-239. Nonetheless, at the time of the trial in the case before us, Arlington County was not the proper venue and I see no principled reason to adopt a "no harm, no foul" approach to the analysis of this issue.

For the reasons stated, I join in the analysis and judgment of the majority on all issues presented except for those venue issues properly preserved for appeal which relate to identity theft, case number CR05-1243 and credit card fraud, case number CR06-449.  I would reverse Gheorghiu's convictions for those offenses and remand those indictments for a new trial in an appropriate venue if the Commonwealth be so advised.